## NEW ORLEANS WATERWORKS COMPANY *v.* LOUISIANA.

### ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 590.  Submitted March 10, 1902.—Decided May 5, 1902.

In order to warrant the exercise by this court of jurisdiction over the judgments of state courts, there must be some fair ground for asserting the existence of a Federal question, and in the absence thereof a writ of error will be dismissed, although the claim of a Federal question was plainly set up; and where by the record it appears that such a claim, although set up, had no substance or foundation, the fact that it was raised was not sufficient to give this court jurisdiction.

That the State has power to forfeit the charter of a corporation for an abuse of its privileges, is recognized as law in Louisiana.

In Louisiana a corporation is liable to be proceeded against for taking illegal rates by *quo warranto* at the suit of the State.

Upon a careful review of all the questions, the court is of opinion that no Federal question exists in this record, and that the court is without jurisdiction in this case.

THIS is a proceeding in the nature of a *quo warranto*, brought by the attorney general of the State of Louisiana, in the name

of the State, to obtain a forfeiture of the charter of the defendant, the waterworks company. Upon the trial there was judgment in favor of the company, but upon appeal to the Supreme Court of the State that judgment was reversed, and judgment in favor of the State and against the company was entered, decreeing the forfeiture of the charter and of all the franchises heretofore conferred upon the defendant. The company has brought the case here by writ of error for review.

It appears from the petition filed in behalf of the State, through its attorney general, that in June, 1898, the general assembly of the State adopted a concurrent resolution providing for the appointment of a committee, with instructions to investigate the complaints against the methods of operation of the New Orleans Waterworks Company, and to report back to the general assembly such action as it might deem necessary to the public interests in the premises. The committee was duly appointed, made the investigation, and having submitted two reports thereon, the legislature on July 14, 1898, adopted the following:

" Whereas, the majority and minority reports of the joint committee of the house and senate, appointed to investigate the affairs, administration and condition of the New Orleans Waterworks Company, have been submitted to the general assembly, together with the testimony and evidence adduced at the various sessions of the said committee; and

" Whereas, the subject-matter of the said reports involves the consideration and the determination of intricate questions of law and fact; and

" Whereas, it is impossible, in view of the limited time at its disposal, for the general assembly to give the matter the examination and consideration necessary for a proper determination thereof;

" *Be it, therefore, resolved by the senate, the house of Representatives concurring,* That the whole subject-matter of the said report, together with the testimony and evidence upon which they are based, be respectfully referred to the attorney general of the State for such action in the premises as he may deem proper."

The attorney general after such reference commenced this proceeding, and in the petition it was averred that the water company had been duly incorporated by the state legislature, and that after its incorporation it had been guilty of repeated and continuous violations of the charter, and had thereby forfeited the same and its franchises, and the petition then set forth twelve different causes of forfeiture which were alleged to have been violations of its charter. It was alleged that the company had failed to supply the inhabitants of the city with pure water; that the supply was not only muddy and impure, but also wholly inadequate, either to extinguish fires, to wash yards, alleys and streets, or to furnish the inhabitants with water for bathing and domestic purposes; that the water furnished was at no time fit for drinking or cooking.

It was also averred that the company had habitually since 1878 to the time of filing the petition illegally exacted and collected greater rates than those exacted and collected by the city of New Orleans for the same quantity of water when it was the owner of the plant, and that the company had no right to charge any greater rate than had then been charged by the city. Various other grounds were stated in the petition not necessary to be particularly noticed. The prayer of the petition was for the forfeiture of the charter of the company and all its franchises, and, in the alternative, should that relief not be granted, that then it might be decreed that the company had forfeited all exclusive privileges, and that the city of New Orleans should be adjudged to have the right to contract with any one else for a supply of water and to expropriate the tangible property of the company if the city should see fit, etc.

Exceptions were filed to this complaint, which were overruled by the court, and the waterworks company then answered, denying the allegations of the petition. The city of New Orleans then filed a petition for leave to intervene and to become a party plaintiff in the proceeding. The board of liquidation of the city also filed a petition to intervene and be made a party defendant on the ground that it had an interest in common with the waterworks company to have the complaint against it dismissed. The court allowed both petitions in intervention to be filed, and

the State then answered the petition in intervention of the board of liquidation, and the water company filed its answer to the petition of the city of New Orleans.

The answer of the water company to the complaint on the part of the State, after denying various allegations, averred that the primary reason for the incorporation of the defendant was neither to provide the city with a proper water supply nor to obtain an enlargement of the existing waterworks, because for more than forty years prior thereto the city had works adequate to furnish such a supply, with full power to enlarge the works as occasion required. The answer also averred that in 1833 the Commercial Bank of New Orleans was incorporated for the purpose of providing a waterworks plant and system for the city of New Orleans, and that it immediately complied with the duty of providing the same, and had operated it for many years; that the city, about the time of the incorporation of the bank, had become an owner of five thousand shares of the stock of the company, and had issued its bonds in payment therefor at the time of the purchase. There was a provision in the charter of the bank that the city might purchase the plant in thirty-five years upon the conditions mentioned in the act. It was further averred that the city had become the owner of the waterworks plant under this provision, in 1869, and that it had operated the same up to and including the year 1878. At that time the city was under great financial pressure and almost bankrupt, and had failed to pay most of the bonds it had issued for the five thousand shares of stock it had owned in the bank corporation, although such bonds were due, and also there were the current obligations of the city to an amount of several millions of dollars over due and unpaid. For the purpose of relieving the city it was averred that the legislature in 1877 passed an act providing for a sale of the plant by the city under the circumstances mentioned in the act, but for some reason subscribers enough were not found who would form a corporation and take the plant upon the terms therein mentioned. Accordingly in 1878 the act was amended making the terms more liberal, and thereupon subscribers who were owners of the city bonds and other obligations, came together and formed a cor-

poration with a capital stock of two million dollars, divided into twenty thousand shares of one hundred dollars each. In accordance with the terms of the act these shares were assigned to the city, and the city, in consideration thereof, sold and assigned to the company the entire waterworks plant of the city, including the franchises and rights granted by the State and sold with the balance of the property, rights and franchises so offered for sale by the act of the legislature, amongst which property thus sold was the valuable and indispensable franchise to be a corporation, which, as averred, was a right not severable in law from the balance of the property. The city has since sold all of the twenty thousand shares of the stock of the company, excepting 3927 shares held by the board of liquidation in trust and as security for the extinguishment of the debts of the city. The balance of the twenty thousand shares is in other hands, whose title is traceable to the city. In order to raise money to carry out its obligations, having received none for the stock issued to the city for the property purchased, the company has, pursuant to the permission granted it by the act of 1877, twice mortgaged the property, including the franchise to be a corporation, and the bonds secured by those mortgages are in the hands of *bona fide* purchasers for value, and it is claimed on the part of the defendant that they are indispensable parties to this or any action to destroy the franchise of the defendant to be a corporation. The defendant also avers that the State as plaintiff acts in bad faith in assailing the franchises of the defendant in such an action, and also in violation of the Fourteenth Amendment of the Constitution of the United States, which forbids a State to deprive any person of life, liberty or property without due process of law, or to deny any person within its jurisdiction the equal protection of the laws. It was also alleged that the grant of corporate life to the defendant was not, as is usually the case, a grant of corporate life for the purpose, and consideration only of the establishment of public works or improvements of a public character, where the only consideration passing to the State for the grant of corporate life is some supposed increased general public benefit re-

sulting from the construction and installation of public works; but that, on the contrary, in the case of the defendant corporation, the contract and agreement between the State and the defendant was, and is, an unquestionable contract of bargain and sale of all the property, rights and franchises described in the acts of 1877 and 1878, for an exact price fixed by the State in its offer of the property for sale, which offer was accepted and price paid by the defendant as the result of a bargaining in which the State was acting, not alone in its character as a sovereign, but as a merchant and trader in commerce, and that in the bargaining and sale of the said property and franchises the State must, in law and by the courts, be considered a trader engaged in driving a hard commercial bargain in its own interest and on its own terms, and for its own benefit and profit. The contract thus set forth, it was averred, was protected from all impairment at the hands of the State, by the Constitution of the United States, particularly by section 10 of article 1, acting on the State of Louisiana as a prohibition, while acting or moving, as plaintiff in this action, in impairment of the faith of its own contract, to the same extent as if such impairment had been attempted through and by means of legislation compassing the same effect and result, that if the joint resolution of the state legislature, referred to in the petition, could be construed as directing the institution and prosecution of this suit, or as directing the attorney general of the State, in the name of the State, to institute and prosecute this action, for the purpose and with the intent to segregate from the mass of the property sold by the State to the defendant its franchise to be a corporation, or if there exist any other statutes of the State authorizing or directing the attorney general to that end and purpose, such joint resolution and statutes are repugnant to the Constitution of the United States, particularly to section 10 of article 1 thereof, which is specially pleaded in defence of this action. The defendant also averred that by virtue of the provisions of section 15 of the charter of defendant, (Act No. 33 of the Laws of 1877,) the remedy for illegal charges for water was confined to an application by the city for a mandamus to compel the

company to desist from such charges. The section is reproduced in the margin.[1]

The answer further specifically denied all grounds of forfeiture and prayed that the plaintiff's suit might be dismissed. The case came to trial in the city of New Orleans, and after an investigation of the issues raised by the pleadings, including the examination of a large number of witnesses and the hearing of arguments of counsel, the court determined, (1) that the two intervening parties, the city of New Orleans and the board of liquidation, should not have been allowed to intervene, and accordingly it was decreed that the intervention of those parties should be dismissed at the cost of the respective intervenors. (2) The court then ordered judgment in favor of the water company and against the plaintiff, the State of Louisiana, rejecting its demand for the forfeiture of the defendant's charter. The State appealed from that judgment to the Supreme Court, and the city of New Orleans also took a separate appeal from the judgment dismissing its intervention. Upon hearing in the Supreme Court the judgment in favor of the water company was reversed, and, as already stated, a judgment was entered forfeiting the charter of the water company.

*Mr. Edgar H. Farrs, Mr. Ernest B. Kruttschnitt, Mr. B. F. Jonas* and *Mr. James R. Beckwith* for the New Orleans Waterworks Company.

---

[1] SEC. 15. Be it further enacted, etc., That said waterworks company shall have the right to fix the rates of charges for water; provided, that the net profits of the company shall not exceed ten per cent per annum, and shall publish sworn annual statements of its business and condition; and that the city council shall have the power to appoint a committee of not less than five, who shall have access to the books of the said company and make such extracts from the same as they may deem necessary, and in case the said profit shall exceed ten per cent, the city council shall have the right to require said company to reduce the price of water in such manner, and in such a proportion, that the profits shall never exceed the above named rates; and provided, further, that the rates charged shall never exceed those now paid by the city, and in case said company shall refuse compliance, the demand of said city may be enforced by a writ of mandamus.

*Mr. Walter Guion, Mr. Benjamin Rice Forman* and *Mr. Samuel L. Gilmore* for New Orleans.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The defendant in error has made a motion to dismiss this writ of error on the ground of a lack of jurisdiction, because no Federal question is disclosed in the record.

The plaintiff in error, on the contrary, claims the existence in the record of several questions of a Federal character, and in the brief prepared to oppose this motion they are set forth as follows:

"(1) The charter of the waterworks company prescribing mandamus as the remedy to maintain a lawful tariff of water rates, is not the substitution by the writs of forfeiture of charter, as a remedy for the maintenance of unlawful ratès, a breach of the contract, and a deprivation of the property without due process of law, and a denial of the equal protection of the laws?

"(2) If such remedy be sanctioned by, and sought pursuant to a state statute, subsequent in date to the charter of the waterworks company, does not such a statute impair the obligation of the charter contract, divest vested rights, and deny to said company the equal protection of the laws?

"(3) Can the State forfeit such a charter and take back the franchises at the same time that she leaves the corporation in possession of the physical property depleted in value by the loss of the franchise, and at the same time that she keeps the money paid for the property plus the franchise?

"(4) The general law of the State providing a *restitutio in integrum* in all cases where a synallagmatic, commutative contract is dissolved, and the charter containing no special provision taking the State's contract from under general provisions of law, is not a state statute authorizing the attorney general to institute proceedings to forfeit the contract and take back the franchise, at the same time that the State keeps the consideration paid for the same, a statute impairing the obligations of a contract?

" (5) Is not a judicial decision refusing to apply to this contract the general provisions of the law of contracts prevailing in the State, a taking by the State through her judiciary of the property of the defendant corporation without due process of law ?

" (6) Is not the legislative resolution, the action of the attorney general, and the action of the Supreme Court of the State, the taking by the State of property without due process of law through the instrumentality of her legislative, her executive and her judicial departments, both jointly and severally ?

" (7) Is not the refusal to apply to this case the general provisions of the law of contract prevailing in the State of Louisiana a denial to the plaintiff in error of the equal protection of the laws of the State of Louisiana ? "

These questions are, as is said, simply amplifications of the grounds actually taken by plaintiff in error upon the trial and on the argument of the case in the Supreme Court of the State, and which are plainly set out in the record. This may be assumed, and the point which arises is whether the matters thus set forth do in truth create even a color of a Federal question.

It has long been the holding of this court that in order to warrant the exercise of jurisdiction over the judgments of state courts there must be something more than a mere claim that a Federal question exists. There must, in addition to the simple setting up of the claim be some color therefor, or, in other words, the claim must be of such a character that its mere mention does not show it destitute of merit; there must be some fair ground for asserting its existence, and, in the absence thereof, a writ of error will be dismissed, although the claim of a Federal question was plainly set up. Thus in *Millingar* v. *Hartupee*, 6 Wall. 258, the Chief Justice (at page 261) said : " Something more than a bare assertion of such an authority seems essential to the jurisdiction of this court. The authority intended by the act is one having a real existence, derived from competent governmental power." This case arose under the twenty-fifth section of the Judiciary Act, and jurisdiction was sought to be maintained upon the assertion that the validity of

an authority exercised under the United States was drawn in question, and the decision was against its validity. It was held not sufficient to make the claim, but there must be some color of foundation for its assertion.

In *New Orleans* v. *New Orleans Waterworks Company*, 142 U. S. 79, upon a motion to dismiss the writ of error on the ground that no Federal question was involved, it was said by the court (page 87):

" While there is in the amended and supplemental answer of the city a formal averment that the ordinance No. 909 impaired the obligation of a contract arising out of the act of 1877, which entitled the city to a supply of water free of charge, the bare averment of a Federal question is not in all cases sufficient. It must not be wholly without foundation. There must be at least color of ground for such averment, otherwise a Federal question might be set up in almost any case, and the jurisdiction of this court invoked simply for the purpose of delay."

Again, in *Hamblin* v. *Western Land Company*, 147 U. S. 531, upon a like motion to dismiss the writ of error, the court said: " It is doubtful whether there is a Federal question in this case. A real, and not a fictitious, Federal question is essential to the jurisdiction of this court over the judgment of state courts," citing the two cases just above referred to.

In *St. Joseph & Grand Island Railroad Company* v. *Steele*, 167 U. S. 659, it was said by the court (page 662):

" We cannot accede to the proposition that, because the acts of Congress, which authorized the construction of the bridge in question, gave the right to build a railroad and toll bridge, the conceded power of the State to tax did not extend to the bridge in both aspects. Nor can we agree that the making of such a contention raised a Federal question of a character to confer original jurisdiction in the Circuit Court of the United States. Not every mere allegation of the existence of a Federal question in a controversy will suffice for that purpose. There must be a real, substantive question, on which the case may be made to turn."

Although the above case relates to the jurisdiction of the Circuit Court, yet, so far as this question is concerned, the principle is the same as to both courts.

And in *Wilson* v. *North Carolina*, 169 U. S. 586, it was held that there must be a real and substantial Federal question existing in order to give this court jurisdiction to review a judgment of a state court, and if the question raised were so unfounded in substance that the court would be justified in saying there was no fair color for the claim that it was of a Federal nature, the writ would be dismissed.

These cases show the rule and its limitations, and where by the record it appears that although a claim of a Federal question had been plainly made, if it also clearly appear that it lacked all color of merit, and had no substance or foundation, the mere fact that it was raised was not sufficient to give this court jurisdiction.

We must look at the questions submitted by the plaintiff in error in the light of these decisions for the purpose of determining whether there is any fair foundation for the several claims. It must also be remembered that for years prior to and at the time of the formation of this corporation it was the unquestioned law that all corporations were created by the State subject to its implied power, if not stated in the charter, to dissolve the corporation for a misuse or for a non-use of its corporator powers or obligations. The contract contained in a charter is always subject to this power residing in the State.

Thus in *Terrett* v. *Taylor*, 9 Cranch, 43, it was stated by the court (page 51):

" A private corporation created by the legislature may lose its franchises by a misuser or non-user of them; and they may be resumed by the government under a judicial judgment upon a *quo warranto* to ascertain and enforce a forfeiture. This is the common law of the land, and is a tacit condition annexed to the creation of every such corporation."

It is stated by Chancellor Kent, in his Commentaries, (vol. 2, p. 378, Comstock's ed.,) that there were two modes of proceeding judicially to ascertain and enforce the forfeiture of a charter for default or abuse of power; the one by *scire facias*, the other by information in the nature of a *quo warranto;* both these modes of proceeding against corporations being at the instance and on behalf of the government. The State must be a party

to the prosecution, for the judgment is that the parties be ousted, and the franchises seized into the hands of the government.

In *Chicago Life Insurance Company* v. *Needles,* 113 U. S. 574, the court, at page 579, said:

"The case upon the merits, so far as they involve any question of which this court may take cognizance, is within a very narrow compass. The main proposition of the counsel is that the obligation of the contract which the company had with the State, in its original and amended charter, will be impaired, if that company be held subject to the operation of subsequent statutes, regulating the business of life insurance and authorizing the courts, in certain contingencies, to suspend, restrain or prohibit insurance companies incorporated in Illinois from further continuance in business. This position cannot be sustained, consistently with the power which the State had, and, upon every ground of public policy, must always have, over corporations of her own creation. Nor is it justified by any reasonable interpretation of the language of the company's charter. The right of the plaintiff in error to exist as a corporation, and its authority, in that capacity, to conduct the particular business for which it was created, were granted, subject to the condition that the privileges and franchises conferred upon it should not be abused, or so employed as to defeat the ends for which it was established, and that, when so abused or misemployed, they might be withdrawn or reclaimed by the State, in such way and by such modes of procedure as were consistent with law. Although no such condition is expressed in the company's charter, it is necessarily implied in every grant of corporate existence. *Terrett* v. *Taylor*, 9 Cranch, 43, 51; Angell & Ames on Corporations, 9th ed. sec. 774, note."

In that case the question was whether the company could be dissolved on account of its insolvency. Here one of the questions is whether this company can be dissolved and its charter forfeited on account of the illegal rates charged for supplying water. Upon the question of insolvency in the *Needles* case, the court (at page 581) said:

"It is not competent, under existing laws, for this court to inquire whether the state court correctly interpreted the evi-

dence as to the company's insolvency; nor whether the facts make a case which, under the statute of 1874, required or permitted a judgment perpetually enjoining it from doing any further business. We are restricted by the settled limits of our jurisdiction to the specific inquiry whether the statutes themselves, upon which the judgment below rests, impair the obligation of any contract which the company, or its policyholders, had with the State, or infringe any right secured by the National Constitution. . . . Did the company, by its charter, have a contract that it should, without reference to the will of the State, or the public interests, exercise the franchises granted by the State after it became insolvent and consequently unable to meet the obligations which, as a corporation, under the sanction of the State, it had assumed to its policyholders? Our answer to these questions is sufficiently indicated by what has been said."

The statute in question in the above case, it will be observed, was passed subsequently to the grant of the charter to the corporation. Even there it was held that such a statute did not impair the obligation of the contract contained in such charter. In the case before us there is no subsequent statute.

And again, at page 584 of the same case:

"It is further contended that the state enactments in question impair the obligation of the contracts which the company has made with its creditors and policyholders. To this it is sufficient to reply, in the language of the court in *Mumma* v. *Potomac Co.*, 8 Pet. 281, 287, where it was said: 'A corporation, by the very terms and nature of its political existence, is subject to a dissolution, by a surrender of its corporate franchises, and by a forfeiture of them for wilful misuse and nonuse. Every creditor must be presumed to understand the nature and incidents of such a body politic, and to contract with reference to them. And it would be a doctrine new in the law that the existence of a private contract of the corporation should force upon it a perpetuity of existence, contrary to public policy, and the nature and objects of its charter.' The contracts of policyholders and creditors are not annihilated by such a judgment as was rendered below; for, to the extent that the

company has any property or assets, their interests can be protected, and are protected by that judgment. The action of the State may or may not have affected the intrinsic value of the company's policies; that would depend somewhat on the manner in which its affairs have been conducted, upon the amount of profits it has realized from business, and upon its actual condition when this suit was instituted; but the State did not, by granting the original and amended charter, preclude herself from seeking, by proper judicial proceedings, to reclaim the franchises and privileges she has given, when they should be so misused as to defeat the objects of her grant, or when the company had become insolvent so as not to be able to meet the obligations which, under the authority of the State, it had assumed to policyholders and creditors."

That the State has power to forfeit the charter of a corporation for an abuse of its privileges is recognized as the law of Louisiana. The Civil Code of that State, article 447, has for many years authorized a proceeding in the nature of a *quo warranto* to forfeit the charter for misuse, and it has been held that such article applies to every charter granted since its adoption. *Atchafalaya Bank* v. *Dawson*, 13 La. R. 497; *State of Louisiana* v. *New Orleans Gas Light & Banking Company*, 2 Rob. La. 529, 532.

Again, the claim that the judgment deprives the plaintiff in error of property without due process of law must be looked at with reference to the cases upon the subject as to what constitutes due process of law. Thus in *Davidson* v. *New Orleans*, 96 U. S. 97, it was held that a statute which required that before an assessment upon land should become effectual it must be submitted to a court of justice, with notice to the owner of the property and an opportunity given him to appear and contest the assessment, constituted due process of law.

In *Murray's Lessee et al.* v. *Hoboken Land &c. Company*, 18 How. 272, the question of what amounted to due process of law was examined, and the proceeding in that case held valid. Mr. Justice Curtis said, in delivering the opinion of the court:

"To what principles, then, are we to resort to ascertain whether this process, enacted by Congress, is due process? To

this the answer must be twofold.   We must examine the Constitution itself, to see whether this process be in conflict with any of its provisions.   If not found to be so, we must look to those settled usages and modes of proceeding existing in the common and statute law of England, before the emigration of our ancestors, and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country."

In *Kennard* v. *Louisiana*, 92 U. S. 480, cited in *Foster* v. *Kansas*, 112 U. S. 201, 206, it was held that a state statute regulating proceedings for the removal of a person from a state office was valid with regard to the Federal Constitution, if it provided for bringing the party proceeded against into court, notifying him of the case he had to meet, giving him an opportunity to be heard in his defence, and for the deliberation and judgment of the court.

And in *Simon* v. *Craft*, 182 U. S. 427, it was held that the essential elements of due process of law were notice and an opportunity to defend, and in determining whether those rights were denied the court will be governed by the substance of things and not by mere form; that the due process clause in the Fourteenth Amendment of the Constitution did not necessitate that the proceedings in a state court should be by a particular mode, but only that there should be a regular course of proceeding, in which notice was given of the claim asserted and opportunity offered to defend against it.

Regarding the impairment of any alleged contract, it must be borne in mind that the constitutional provision refers to state legislation, or to an enactment of a legislative character, though by a municipal corporation, made subsequent to the contract, and which impairs its obligation.  *New Orleans Waterworks Company* v. *Louisiana Sugar Refining Company*, 125 U. S. 118, 130 ; *St. Paul Gas Light Company* v. *St. Paul*, 181 U. S. 142, 148.

This court does not obtain jurisdiction to review a judgment of a state court because that judgment impairs or fails to give effect to a contract.   The state court must give effect to some subsequent statute or state constitution which impairs the obli-

gation of the contract, and the judgment of that court must rest on the statute either expressly or by necessary implication. *Railroad Company* v. *Rock,* 4 Wall. 177, 180; *Railroad Company* v. *McClure,* 10 Wall. 511; *Knox* v. *Exchange Bank,* 12 Wall. 379.

These cases are referred to and applied in *Lehigh Water Co.* v. *Easton,* 121 U. S. 388, 392.

With these principles in mind, we come to an examination of the questions raised by the plaintiff-in error.

The answer to the first question, as to mandamus being the exclusive remedy for illegal rates, is that the state court has otherwise construed the charter, and has held that mandamus is not the only remedy, but that the company was liable to be proceeded against by *quo warranto* at the suit of the State through its attorney general. The claim that by so proceeding there is any impairment of the obligation of a contract by any subsequent legislation, or that there has thus been a deprivation of property without due process of law, or a denial of the equal protection of the laws, has no colorable foundation.

An examination of this question, among others, was made by the state court after full hearing by all parties, and all that can possibly be claimed on the part of the plaintiff in error is that such court erroneously decided the law. That constitutes no Federal question.

As to the second question, there is no state statute subsequent in date to the charter of the water company under or by virtue of which this proceeding was commenced, or which in any way affects the contract of plaintiff in error. The joint resolution of the legislature of Louisiana referred the whole matter to the attorney general for him to bring suit to forfeit the charter or to take such action as he might think proper. It was a simple authority, if any were needed, to present the question to the court, and neither the contract nor any other rights of the parties were in anywise altered by such resolution. The proceeding herein is based solely upon an alleged violation of the terms of the charter by the corporation; that question has been judicially determined after a full investigation by the state courts, and in a proceeding to which the company was a party and

after a full hearing has been accorded it in such proceeding. This was due process of law, and no Federal question arises from the decision of the court.

The same answer would seem to fit the other questions submitted by the plaintiff in error. They are all based upon the proposition that the judicial determination of these particular questions by the state tribunal was erroneous, and on account of such error the rights of the plaintiff in error, under the Federal Constitution, have been violated. But mere error in deciding questions of this nature furnishes no ground of jurisdiction for this court to review the judgments of a state court.

Assuming that there was a contract, as is claimed by the plaintiff in error, arising by virtue of the passage of the acts of 1877 and 1878, and their acceptance by the corporation, yet still the erroneous decision by the state court, admitting, *arguendo*, that it was erroneous, raises no Federal question. This court does not and cannot entertain jurisdiction to review the judgment of a state court, solely because that judgment impairs or fails to give effect to a contract. *Curtis* v. *Whitney*, 13 Wall. 68, holds that a statute may even affect a prior contract without always impairing its obligation. The judgment must give effect to some subsequent state statute, or state constitution, or, it may be added, some ordinance of a municipal corporation passed by the authority of the state legislature, which impairs the obligation of a contract, before the constitutional provision regarding the impairment of such contract comes into play. See authorities above cited.

The State in this case has secured the forfeiture of the charter of the defendant by means of a judicial decree obtained in a state court which had jurisdiction to give the relief prayed for, and after a hearing of the defendant in the usual manner pertaining to courts of justice. The facts upon which such forfeiture was based have been judicially declared and found, and the defendant has had full opportunity for its defence upon such hearing. The cause of forfeiture was the fact, which was found by the court, that the corporation had charged illegal rates for the water it furnished, and the right to declare such forfeiture because of a violation by defendant of the conditions

of its charter, was implied in the very grant of the charter itself. The claim, therefore, that the forfeiture was a violation of the charter, and of the contract therein contained, and was on that account a taking of defendant's property without due process of law, or that the State by such judgment had denied to defendant the equal protection of the laws, cannot obtain. Whether defendant had so violated its charter was a fact to be decided by the state court. That court had full jurisdiction over the parties and the subject-matter, and its decision of the question was conclusive in this case so far as this court is concerned.

Neither the legislative resolution, nor the action of the attorney general, nor that of the Supreme Court of the State, nor all combined, can, as contended for by plaintiff in error, be in anywise regarded as the taking by the State of property without due process of law through the instrumentality of its legislative, its executive and its judicial departments, either jointly or severally. When analyzed, the whole claim is reduced to the assertion that in enforcing a condition which is impliedly a part of the charter, the State, through the regular administration of the law by its courts of justice, has by such courts, erroneously construed its own laws. This court in such a case has no jurisdiction to review that determination.

The assumption that the state court has refused to apply to the contract herein set up the general provisions of the law of contracts prevailing in the State, and that, therefore, the State has taken through her judiciary the property of the plaintiff in error without due process of law, is wholly without foundation. If it were otherwise, then any alleged error in the decision by a state court, in applying state law to the case in hand, resulting in a judgment against a party, could be reviewed in this court on a claim that on account of such error due process of law had not been given him. This cannot be maintained.

That the bondholders were not made parties is also a question which this court cannot review. As is said in the *Needles case,* 113 U. S. *supra,* the corporation, by the very terms of its existence, is subject to a dissolution at the suit of the State on account of any wilful violation of its charter, and the creditors

of the corporation deal with it subject to this power.   They must accept the result of the decision of the state court.

Upon a careful review of all the questions, we are of opinion that within the authorities cited the claim that any Federal question exists in this record is so clearly without color of foundation that this court is without jurisdiction in this case, and the writ of error is, therefore,

*Dismissed.*