# COSMOPOLITAN CLUB *v.* COMMONWEALTH OF VIRGINIA.

### ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 130. Argued January 23, 1908.—Decided February 24, 1908.

The charter of a private corporation may be forfeited or annulled for the misuse of its corporate privileges and franchises, and its forfeiture or annulment, by appropriate judicial proceedings, for such a reason would not impair the obligation of the contract, if any, arising between the State and the corporation out of the mere granting of the charter. The charter granted to a club, *held*, in this case, not to amount to such a contract

COSMOPOLITAN CLUB *v.* VIRGINIA.     379

that the club could disregard the valid laws subsequently enacted by the State, regulating the sale of liquor.

The judgment of a court of competent jurisdiction of Virginia, made after a hearing, that a corporation of that State had violated the liquor laws of the State, and that in pursuance of statutory provisions the charter rights and franchises of the club ceased without further proceedings, *held,* in this case not to have violated any right belonging to the club under the contract or due process clauses of the Constitution of the United States.

THE facts are stated in the opinion.

*Mr. R. Randolph Hicks* for appellant:

Charters of incorporation are within the protection of the contract clause of the Constitution. *Dartmouth College Case,* 4 Wheat. 518.

The judgment complained of annulled the charter of appellant, and unless the State of Virginia retained the right, by some constitutional provision or legislative act, of repealing, forfeiting or modifying the charter of appellant the judgment is erroneous. The constitution in effect in Virginia on the date of the granting of appellant's charter contained no such reservation, though such a provision does appear in the constitution of Virginia adopted in the year 1903, and which is now in force. Section 1173, Code, is the only section in which the legislature retained the right of repealing, altering or modifying the charter of any bank and likewise retained the right of repealing, altering or modifying the *provisions* of chapter 47 of the Code of Virginia. Said section nowhere reserved to the legislature the right of repealing, altering or modifying charters granted under the provisions of § 1145 of said Code. In order to vest in the legislature this right, the court must write into § 1173 the words "charters granted under" in front of the words "the provisions of chapter 47." The reservation of the right to repeal, alter or modify the provisions of chapter 47 does not give the right to alter or modify or amend a charter granted under those provisions. Courts cannot supply words in a statute where there is no ambiguity and the meaning of the language is plain. *Maillard* v. *Lawrence,* 16 How. 261;

*United States* v. *Fisher*, 2 Cranch, 399; *Levy* v. *McCartee*, 6 Pet. 102; *United States* v. *Weltberger*, 5 Wheat. 94; *Denn* v. *Reives*, 10 Pet. 527.

When the meaning of a statute is plain, consequences and motives are not to be considered and though the literal interpretation may defeat the object of the act, still it must be adopted. *King* v. *Barnham*, 15 E. C. L.157. See also *St. Paul* v. *Phelps*, 137 U. S. 528; *Bate* v. *Sulzberger*, 157 U. S. 1; *Hadden* v. *Collector*, 5 Wallace, 107; *Sturges* v. *Crowninshield*, 4 Wheat. 202.

In the case at bar the privilege of selling intoxicating liquors was granted by a subsequent act of the legislature. The rights thus conferred might, at any time, be withdrawn and the legislature might have prescribed a fine or imprisonment for a misuse of this privilege, but the legislature could not take away the contractual rights as set out in the charter of incorporation as a punishment for the misuse of this privilege when those contractual rights were perfectly innocent, not inhibited by the statute, nor even subject to inhibition by the legislature. *Washington Bridge Co.* v. *State*, 18 Connecticut, 53; *Bailey* v. *Phila. R. R. Co.*, 4 Harr. 389; *State* v. *Noyes*, 47 Maine, 189; *Pingry* v. *Washburn*, 1 Aiken, 264; *Miller* v. *New York & R. R. Co.*, 21 Barb. 513; *People* v. *Jackson & Michigan Plank Road Co.*, 9 Michigan, 285–307; *Sloan* v. *Pacific R. R. Co.*, 61 Missouri, 24; *Attorney General* v. *Chicago & C. R. R. Co.*, 35 Wisconsin, 425.

If this conclusion is not correct, then the legislature may at any time destroy any charter by prohibiting some one power in the charter which is properly a subject of police regulation and imposing as a punishment the destruction of all the other innocent rights and thus do indirectly what it cannot do directly. Undoubtedly the contract evidenced in the charter may be forfeited like any other contract by nonuser or misuser, in regard to matters which are of the essence of the contract between the corporation and the State. *Dartmouth College* v. *Woodward*, 4 Wheat. 658; *State* v. *Council Bluffs*, 11 Nebraska,

356; *S. C.,* 9 N. W. Rep. 564; *Commonwealth* v. *Commercial Bank,* 28 Pa. St. 389; *Hodsdon* v. *Courtland,* 16 Maine, 314.

But this misuser must be a misuser or nonuser of the rights granted in the charter, which was not the case with appellant. As far as the record shows there has been neither misuse nor nonuse of any contractual right granted in the charter of incorporation.

*Mr. William A. Anderson,* Attorney General of the State of Virginia, for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

Complaint having been made in due form that the Cosmopolitan Club, a corporation of Virginia, formed to promote social intercourse, athletic and physical culture, and to encourage manly sports, had violated and evaded the laws of that commonwealth regulating the licensing and sale of liquors, the corporation court of the city of Norfolk, where the club had its domicil, gave notice that it would, on a named day, inquire into the truth of the charge.

The proceeding was based on a statute of Virginia passed March 12, 1904,[1] amendatory of a previous statute, and providing that "upon complaint of any person that any such corporation so chartered as a social club is being conducted, or has been conducted, for the purpose of violating or evading the laws of this State regulating the licensing and sale of liquors, and after service of such complaint on such corporation at least ten days before the hearing of said complaint, the circuit court of the county or the corporation court of the city wherein is located its place of business or meeting, or the judge thereof in vacation, shall inquire into the truth of said com-

[1] Chapter 116. An act to amend and reënact § 142 of an act of the General Assembly of Virginia, entitled "An Act to amend and reënact §§ 75–147, inclusive, of an act approved April 16, 1903," and to provide how social clubs chartered since April 16, 1903, shall obtain licenses to sell ardent spirits, etc. Acts of Assembly, 1904; p. 214.

plaint; and if the court, or judge in vacation, shall adjudge that
the said corporation is being conducted, or has been conducted,
for the purpose of violating or evading the laws of the State
regulating the licensing and sale of liquors, the chartered rights
and franchises of said corporation shall cease and be void
without any further proceedings, and the said corporation and
all persons concerned in the violation or evasion of said law
shall be subject to the penalties prescribed herein."

At the hearing of the case the club, by its counsel, moved to
dismiss the complaint on the ground that under the constitu-
tions of Virginia and of the United States the court had no
power to entertain it and that the act under which it was filed
was contrary to those constitutions. The motion to dismiss
was overruled and the parties introduced their evidence. The
result was a judgment by the corporation court that the club
had been conducted for the purpose of violating and evading
the laws of Virginia regulating the licensing and sale of liquors.
The defendant then applied to the Supreme Court of Appeals
of Virginia for a writ of error and supersedeas. The latter
court, upon inspection of the record, refused the application
upon the ground that the judgment was plainly right. The
president of that court allowed a writ of error for the review
of its judgment by this court.

It is contended by the plaintiff in error that the judgment
against it was inconsistent with the contract clause of the
Constitution of the United States. The charter of the club,
it is insisted, was a contract between it and Virginia, which
could not be amended or annulled unless at the time it was
granted, the State, by constitutional provision or by legislative
act, had retained or reserved the right of repealing, forfeiting
or modifying it. Neither the state constitution nor any stat-
ute, it was alleged—and we assume such to be the fact—con-
tained any such reservation at the time the club's charter was
granted.

Assuming that the charter of the club constituted a contract
between it and the State, it would not follow that the statute

of Virginia, enacted in 1904, after the granting of such charter, was inconsistent with the clause of the Constitution forbidding a State from passing any law impairing the obligation of a contract. The principle is well established that the charter of a private corporation may be forfeited or annulled for the misuse of its corporate privileges and franchises, and that its forfeiture or annulment, by appropriate judicial proceedings, for such a reason, would not impair the obligation of the contract arising between the State and the corporation out of the mere granting of the charter. In *Chicago Life Ins. Co.* v. *Needles,* 113 U. S. 574, 580, an insurance company contested the validity, under the contract cause of the Constitution, of a statute of Illinois prescribing certain regulations (not in force when the company's charter was granted) in reference to the conduct of life insurance business in that State. This court overruled the contention, observing: "The right of the plaintiff in error to exist as a corporation, and its authority, in that capacity, to conduct the particular business for which it was created, were granted, subject to the condition that the privileges and franchises conferred upon it should not be abused, or so employed as to defeat the ends for which it was established, and that, when so abused or misemployed, they might be withdrawn or reclaimed by the State, in such way and by such modes of procedure as were consistent with law. Although no such condition is expressed in the company's charter, it is necessarily implied in every grant of corporate existence. *Terrett* v. *Taylor,* 9 Cranch, 43, 51; Angell & Ames on Corporations (9th ed.), § 774, note. Equally implied, in our judgment, is the condition that the corporation shall be subject to such reasonable regulations, in respect to the general conduct of its affairs, as the legislature may, from time to time, prescribe, which do not materially interfere with or obstruct the substantial enjoyment of the privileges the State has granted, and serve only to secure the ends for which the corporation was created. *Sinking Fund Cases,* 99 U. S. 700; *Commonwealth* v. *Farmers' & Mechanics' Bank,* 21 Pick. 542; *Commercial Bank* v.

*Mississippi*, 4 Sm. & Marsh, 439, 497, 503. If this condition be not necessarily implied, then the creation of corporations, with rights and franchises which do not belong to individual citizens, may become dangerous to the public welfare through the ignorance, or misconduct, or fraud of those to whose management their affairs are intrusted. It would be extraordinary if the legislative department of a government, charged with the duty of enacting such laws as may promote the health, the morals, and the prosperity of the people, might not, when unrestrained by constitutional limitations upon its authority, provide, by reasonable regulations, against the misuse of special corporate privileges which it has granted, and which could not, except by its sanction, express or implied, have been exercised at all."

These principles were expressly reaffirmed, upon a review of the adjudged cases, in *New Orleans Waterworks Co.* v. *Louisiana*, 185 U. S. 336, 347.

It must, therefore, be held that the contract between the club and the State did not authorize the club to disregard the valid law of the State regulating the licensing and sale of liquors. Such a course upon the part of the club was alleged to be a misuse of its corporate privileges and franchises. The distinct charge against the club in the corporation court was that it was being conducted for the purpose of violating and evading the statute regulating the licensing and sale of liquors—a statute which the commonwealth could rightfully enact under its power to care for the health and morals of its people. And the court adjudged that the charge against the club was sustained—the result being that, by the statute, the chartered rights and franchises of the club ceased without any further proceedings. Even if this court could reëxamine the judgment of the corporation court on the facts, the present record would not justify us in holding that error was committed.

Was this result consistent with the due process enjoined by the Constitution? This question must be answered in the affirmative. The proceedings against the club were had in a

court competent under the constitution and laws of Virginia to determine the questions raised by the complaint against the club. This must be assumed to be the case after the highest court of Virginia refused a writ of error upon the ground that the judgment of the corporation court was plainly right. The mode of proceeding against the club was not unusual in such cases. As early as *Terrett* v. *Taylor,* 9 Cranch, 43, 51, this court said: "A private corporation created by the legislature may lose its franchises by a misuser or nonuser of them; and they may be resumed by the government under a judicial judgment upon *quo warranto* to ascertain and enforce the forfeiture." So in *New Orleans Waterworks* v. *Louisiana,* above cited, the first of several questions raised there was that since the charter of a certain waterworks company prescribed mandamus as the remedy to maintain a lawful tariff of water rates, was not the substitution by the writs of forfeiture of charter, as a remedy for the maintenance of unlawful rates, a breach of the contract, and a deprivation of the property without due process of law, and a denial of the equal protection of the laws? The court answered the question by saying (p. 351): "The answer to the first question, as to mandamus being the exclusive remedy for illegal rates, is that the state court has otherwise construed the charter, and has held that mandamus is not the only remedy, but that the company was liable to be proceeded against by *quo warranto* at the suit of the State through its attorney general. The claim that by so proceeding there is any impairment of the obligation of a contract by any subsequent legislation, or that there has thus been a deprivation of property without due process of law, or a denial of the equal protection of the laws, has no colorable foundation. An examination of this question, among others, was made by the state court after full hearing by all parties, and all that can possibly be claimed on the part of the plaintiff in error is that such court erroneously decided the law. That constitutes no Federal question."

It thus appears that the club ceased to exist as a corpo-

ration by virtue of a judgment of a court of competent jurisdiction, all the parties being before it and given full opportunity to be heard. Such a judgment cannot be held to have violated any right belonging to the club under the contract or other clause of the Federal Constitution. *Foster* v. *Kansas,* 112 U. S. 201, 206; *Kennard* v. *Louisiana,* 92 U. S. 480; *Louisiana Waterworks Co.* v. *Louisiana,* above cited.

*Judgment affirmed.*