JAMES R. MORFORD, ATTORNEY-GENERAL OF THE STATE OF DELAWARE, upon the relation of HALLIE GRAY; MARY SHALLCROSS; MARY C. POOL; EDWARD S. JONES, TRUSTEE; and THE MAYOR AND COUNCIL OF MIDDLETOWN, a municipal corporation of the State of Delaware,

*vs.*

THE TRUSTEES OF THE MIDDLETOWN ACADEMY, a corporation of the State of Delaware.

*New Castle, April 30, 1940.*

*Herbert L. Cohen,* for complainant and relators.

*Harry K. Hoch,* for defendant.

THE VICE-CHANCELLOR: This suit was brought by the Attorney-General upon relation of certain residents of Middletown, Delaware, as well as of the municipal corporation of Middletown and of one of the trustees of defendant. The bill charges that by reason of non-user by defendant of its corporate franchises, its charter should be revoked and forfeited, its affairs wound up, and assets distributed by a receiver to be appointed by this court. Defendant has demurred.

The bill alleges that defendant was incorporated in 1826 by act of the General Assembly, 6 *Laws of Del., Chap.* 320, entitled: *"An act to incorporate the trustees of the Middletown Academy."* By this statute, certain named individuals were declared "to be one community corporation or body politic, to have continuance forever, by the name of *'The trustees of the Middletown Academy,'* and by the same name shall have perpetual succession." The trustees are authorized to receive and hold property transferred to them "for the use of the said institution" and to dispose of the same "in such manner and form as they may deem most advantageous or beneficial to the said institution"; and the corporation is enabled to sue and be sued and do all things "which bodies politic or corporate may or can lawfully do."

The trustees or a majority of them are further empowered to make, alter and repeal by-laws, regulations and ordinances "which they may deem necessary and proper for the good government of the said Academy as a seminary of useful learning; to appoint professors, tutors and such officers and persons as they may deem requisite for the said Academy." The charter contains provisions relating to a president of the board of trustees, a secretary and treasurer; provisions relating to a corporate seal; and upon vacancies occurring in the board, the trustees remaining are empowered to fill such vacancies. The trustees are authorized to receive subscriptions "for the use and benefit of the said institution" and to enforce payment thereof. Defendant is a non-stock corporation and its charter makes no provision for members other than the trustees.

The bill alleges that in 1824, prior to the incorporation of defendant, an act of the General Assembly, 6 *Laws of Del., Chap.* 238, authorized the raising of the sum of six thousand dollars by a lottery, to be applied "to the erection of a building sufficiently large to contain rooms for an academy and for elementary schools, and also a room for public worship." In 1825 a supplemental act, 6 *Laws of Del., Chap.* 293, authorized the raising of an additional four thousand dollars by means of the lottery. Whether any money was so raised does not appear. It is alleged, however, that in 1824 there were no public schools or facilities for giving instruction in Middletown and its vicinity; that the act incorporating defendant was passed shortly prior to the completion of the academy building in 1826; that a site was acquired by the trustees and an academy erected in Middletown, and in 1827, the school began to function "in accordance with the rules and regulations of The Board of Trustees of the defendant."

It is alleged that the academy was used as a school for elementary education until about 1876. In that year defendant leased the academy building at a nominal rental to two public school districts and "thereupon ceased to function

in accordance with its charter." By an act of the Legislature, 15 *Laws of Del., Chapter* 357, passed in 1877, these two school districts were united into one district by the name of "the Middletown Schools." The act recites that the schools were then occupying the academy building. It provides among other things that defendant's trustees should share in the government of the schools by appointing three of the nine commissioners of the school district so long as the occupancy of the academy building should continue.

The bill further alleges that, "except for carrying out the functions described" in the last mentioned statute, "defendant has not exercised the corporate powers, privileges and franchises as granted by the State of Delaware in its charter, from 1876" to the filing of the bill; that even these functions "were in time no longer necessary or required, as during the year 1929 a new and enlarged school house was built" at a different location in Middletown and that "the occupancy of the academy building for educational purposes was terminated during that year"; that "the three commissioners appointed by" defendant's trustees "thereupon ceased to be commissioners of the Middletown Schools"; that "although the defendant, from 1929 to the present time, has ceased to use its corporate franchise, it still owns and controls the academy building and some other property"; that "few repairs were made by defendant to the academy building, so that it became delapidated [*sic*] and quickly deteriorated so as to become useless to the community and an unsightly structure on one of the main streets" of Middletown. It is alleged that

"* * * it is detrimental to the welfare of the State of Delaware and the Town of Middletown to permit the defendant, whose property was acquired from the general public, to remain in its present situation * * * where defendant has not exercised the privileges and franchises granted to it for many years prior to 1929 and has not exercised them for at least ten years prior to the time of the filing of this Bill"; that "the interests of the State of Delaware, the Town of Middletown and its residents, require that the charter of the defendant be revoked and forfeited for the non-use of the defendant's corporate powers, privileges and franchises."

One of the six causes of demurrer assigned is that any attempt to amend or revoke defendant's charter would constitute an impairment of the obligation of contracts guaranteed by *Section* 10 of *Article* 1 of the *Constitution of the United States* for the reasons that its charter gives it perpetual existence, that at the time this charter was granted there was in the *Constitution of Delaware* no reservation of power to revoke corporate charters, and that defendant has never accepted the provisions of the *Constitution of* 1897 which contains such a reservation.

Defendant relies on the celebrated case of *Trustees of Dartmouth College v. Woodward,* 4 *Wheat.* 518, 4 *L. Ed.* 629. That case does not support the contention that an adjudication of forfeiture of a charter on the ground of non-user is within the constitutional prohibition of the contract's clause. At common law there is a tacit condition annexed to the creation of every private corporation that its charter may be forfeited for non-user of its franchises. *Terrett v. Taylor,* 9 *Cranch* 43, 51, 3 *L. Ed.* 650; *Higgins v. Downward & Sons,* 8 *Houst.* 227, 246, 247, 14 *A.* 720, 724, 32 *A.* 133, 40 *Am. St. Rep.* 141; *Wilmington City Ry. Co. v. People's Ry. Co.,* (*Del. Ch.*) 47 *A.* 245, 249, 250; *State v. Delmar Jockey Club,* 200 *Mo.* 34, 98 *S. W.* 539; *State v. Pipher,* 28 *Kans.* 127; 1 *Blackstone Com., Chap.* 18, *IV., p.* 485; 16 *Fletcher Cyc. Corp.,* § 8061; 13 *Am. Jur., pp.* 1170, 1171. Such forfeiture, determined by appropriate judicial proceedings, is not an impairment of the obligation of the contract arising between the state and the corporation out of the granting of its charter. It is rather the consequence of the corporation's own acts of omission in violation of conditions implied in the grant. This distinction was recognized by Justice Story in the *Dartmouth College case* when he said (4 *Wheat.* 675, 676, 4 *L. Ed.* 629); "But an eleemosynary, like every other corporation, is subject to the general law of the land. It may forfeit its corporate franchises, by misuser or non-user of them." The same principle is recognized elsewhere in the opinions filed in that

case, 4 *Wheat.* 658, 659, 696, 4 *L. Ed.* 629; and in later cases, *Cosmopolitan Club v. Virginia,* 208 *U. S.* 378, 383, 28 *S. Ct.* 394, 52 *L. Ed.* 536; *New York Electric Lines Company v. Empire City Subway Company,* 235 *U. S.* 179, 194, 195, 35 *S. Ct.* 72, 59 *L. Ed.* 184, *Ann. Cas.* 1915A, 906; *Public Service Commission of Puerto Rico v. Havemeyer, et al.,* 296 *U. S.* 506, 515, 517, 56 *S. Ct.* 360, 80 *L. Ed.* 357; *Philadelphia, W. & B. R. R. Co. v. Bowers,* 4 *Houst.* 506, 531.

Another and closely related ground of demurrer is that it appears from the bill that the jurisdiction of this court is invoked under *Article* 9, § 1, of the *Delaware Constitution of* 1897, whereas defendant was incorporated prior to the adoption of that constitution and it is not alleged that defendant has accepted the provisions thereof. The section of the Constitution referred to contains the following:

"The General Assembly shall, by general law, provide for the revocation or forfeiture of the charters of all corporations for the abuse, misuse, or non-user of their corporate powers, privileges or franchises. Any proceeding for such revocation or forfeiture, shall be taken by the Attorney-General, as may be provided by law."

Pursuant to this provision, an act was passed in 1899, 21 *Laws of Del., Chap.* 273, *Sec.* 62 as follows:

"Any corporation organized under this Act shall forfeit all rights, privileges and franchises obtained thereunder, if it shall fail, for two years after its organization, to commence in good faith the business, or to promote the objects or purposes for which it was organized."

This statute remained substantially unchanged until 1917 when it was amended, 29 *Laws of Del., Chap.* 113, *Sec.* 18, as follows:

"1981. Section 67. FORFEITURE OF CHARTER; PROCEEDINGS:—The jurisdiction to revoke or forfeit charters of corporations organized under the laws of this State for abuse, mis-use or non-use of their corporate powers, privileges or franchises shall be vested in the Court of Chancery. It shall be the duty of the Attorney-General, upon his own motion or upon the relation of proper parties, to proceed for this purpose by bill in equity or by information in the nature of a bill in equity in the county in which the principal office or place of business of the corporation shall be located. The Court of Chancery shall have power, by appointment of receivers or otherwise, to administer and

wind up the affairs of any corporation, whose charter shall be revoked or forfeited under the provisions of this section, and to make such orders and decrees with respect thereto as shall be just and equitable respecting its affairs, business, property and assets and the rights of the stockholders and creditors thereof. No proceedings shall be instituted hereunder for non-use of any corporation's powers, privileges or franchises during the first two years after its incorporation." As thus amended, it is now *Section* 68 of the *Delaware Corporation Law. Rev. Code* 1935, § 2100.

It is not clear to me whether defendant's objection is that the right of the State to demand and obtain a judicial declaration of forfeiture of corporate charters was created by the Constitution of 1897, or that this court's jurisdiction to entertain suits for such purpose is based upon that constitution. But either contention is unavailing. The right to exact forfeiture of a charter for non-user of franchises existed at common law and the legal mode of proceeding against the corporation was *scire facias,* or an information in the nature of a *quo warranto* prosecuted by the State. *Higgins v. Downward & Sons,* 8 *Houst.* 227, 246, 247, 14 *A.* 720, 724, 32 *A.* 133, 40 *Am. St. Rep.* 141, and other cases cited above. This common law right is neither annulled nor abridged, expressly or by implication, by any reasonable construction of the quoted section of the *Constitution of* 1897 or the subsequent statutes. *Wilmington City Ry. Co. v. People's Ry. Co.,* (*Del. Ch.*) 47 *A.* 245, 249, 250.

It is not suggested that a proceedling by a suit in equity rather than *scire facias* or *quo warranto* in anywise modifies the substantive rights involved, or prejudices the corporation, or is unsuitable for the purpose. This being so, the substitution of another and equally adequate remedy for a pre-existing one is unobjectionable and cannot conceivably impair any contract or other right of defendant. 12 *Am. Jur., pp.* 72-74.

Defendant next challenges the bill on the grounds that it states no case for relief in this court and is without equity. It is insisted that the allegations are wholly inadequate to support the charge of non-user of defendant's franchises.

These allegations, summarized above, are essentially that from 1876 to the present, defendant has not exercised its corporate powers, privileges and franchises; except, until 1929, by leasing the acadamy property to the public school district, and by participating in the selection of public school commissioners; and since 1929, by holding certain property owned by it. For the present, I shall consider only the period from 1929 to the filing of the bill, and assume that defendant's previous activities were in full exercise of its franchises.

Authorities above cited make manifest that while the acceptance of a corporate charter implies an undertaking to act up to the end or design of its creation, the charter will not be forfeited merely because the corporation does not exercise all of the franchises and powers granted it. But turning to the charter of this defendant, we find that the franchises and powers are directed to a specific object and purpose, an "Academy" in Middletown "as a seminary of useful learning." The powers to hold property transferred to the trustees "for the use of the said institution," and to dispose of the same are expressly modified and qualified by the phrase "in such manner and form as they may deem most advantageous or beneficial *to the said institution.*" The power of the trustees to make by-laws, regulations and ordinances is confined to those "which they may deem necessary and proper for the good government *of the said Academy* as a seminary of useful learning." The power to appoint officers and persons is limited to such "as they may deem requisite *for the said Academy.*" Again, the power to take and receive subscriptions is restricted to those "for the use and benefit *of the said institution.*"

Thus, the State made this grant of powers, privileges and franchises, not that the trustees or their successors, who were its only members, should apply them to their own personal advantage, nor any more to enable them to hold property in a stagnant state, but rather for the sole and only purpose of the establishment and operation of an

"Academy" in Middletown, "as a seminary of useful learning." The furthering of this purpose is the dominant and controlling franchise to which all else is but subordinate and incidental. In its active and proper exercise the public plainly has an interest. Under these circumstances, a duty arose out of defendant's creation to use its powers to promote its essential purpose.

So that, it is of no avail for defendant now to say that it has exercised its franchises by continuing to hold property. For this corporation, the mere holding of property, when not related to the prescribed purpose, is empty shadow; substance could be supplied if, and only if, such exercise were directed and devoted to fostering the end of its creation.

Defendant attempts to excuse its inactivity during the past ten years by pointing to the fact, alleged in the bill; that a new and enlarged school house has been built in Middletown. If by this defendant means that so long as there is another school in Middletown its duty to act under its charter is suspended, then manifestly, this is no excuse. The new school may last for an indefinite period. Its existence might be one circumstance in explanation of a temporary delay, or a change in the precise form of exercise of the franchises; but under the facts before me the existence of the new school alone, furnishes no sufficient justification for defendant's inactivity.

Defendant also insists that the bill is defective in that it fails to allege abuse or misuse of corporate powers, misconduct or incapacity of its trustees, or insolvency. Such allegations are not essential, for the bill is based upon long and continued non-user of defendant's franchises. That, without more, is fatal.

Defendant says that *Section* 64 of the *Delaware Franchise Tax Law*, 41 *Laws of Del.*, *c* 5, *p*. 22, lends support to its contention that non-user of franchises alone is not enough to warrant the forfeiture of a charter. With this I cannot

agree. The section provides among other things that a corporation not engaged in any of the "business activities" for which it was granted a certificate of incorporation shall pay franchise taxes at a reduced rate. These provisions are palpably not intended to alter the law with respect to the non-user of franchises and its consequences. The section deals with franchise taxes and is stated to be applicable to corporations accepting the provisions of the Constitution of the State of Delaware and coming under the provisions of the general corporation law of this state. It appears from the bill that defendant is not such a corporation. Entirely different considerations are applicable to a business corporation. Failure to engage in business activities for which its certificate of incorporation was granted may well be, at least for temporary periods, in the proper exercise of its franchises and powers and may promote the best interests of its shareholders.

It is true, as insisted by defendant, that courts are reluctant to pronounce a death sentence of a corporation. There must be a clear showing of non-user in regard to matters which go to the essence of the contract between it and the state. Whehter or not there has been non-user in a particular case must be determined from the facts of that case. Here, however, it is plain that the unexcused and unexplained failure of defendant for ten years to carry out the essential purpose of its existence consittutes a non-user of franchises of such character as to warrant their recall by the authority which granted them. *Edgar Collegiate Institute v. People ex rel. Hardy,* 142 *Ill.* 363, 32 *N. E.* 494; *State ex rel. Denu v. Rapid City Library Ass'n.,* 32 *S. D.* 248, 142 *N. W.* 973; *State ex inf. Gentry v. Ramona Kennel Club, Inc.,* 320 *Mo.* 740, 8 *S. W. 2d* 1.

Two formal grounds of demurrer remain to be disposed of. Defendant objects that the "parties complainant" have no legal, equitable or beneficial interest in the subject matter of the controversy and are improperly joined in the bill. Notwithstanding that in the bill the parties other than

the Attorney-General are referred to as complainants, it appears from the caption, as well as from a statement immediately before the signatures of these parties, that the suit is brought by the Attorney-General "upon the relation of" these parties. The latter verified the bill "as Complainants and Relators." In view of the *Constitution of* 1897 and *Section* 68 of the *Delaware Corporation Law,* none other than the Attorney-General may properly be a complainant in a suit to forfeit a charter for non-user of franchises. However, since it is clearly shown that the bill is upon the relation of the other persons, the erroneous designation of them as complainants is not sufficient to defeat the bill. The residents of Middletown, the municipal corporation, and one of defendant's trustees, who is also a resident of the town, are individually or together proper persons to be relators.

At the request of the parties, I have deferred until last a consideration of the first ground of demurrer. That is, that the bill is neither signed nor vertified by the complainant, the Attorney-General, as required by *Rule* 31 of this court. Although a number of bills of complaint in previously litigated cases have been referred to, which were unsigned and unverified by the Attorney-General, it does not appear that in any of them objection was made on this account. *Rule* 31 provides: "All bills and petitions * * * shall be signed by the complainant, * * *. Every bill, * * * shall be under oath or affirmation by the complainant * * *." While in cases such as this, the relators may frequently, by reason of more intimate knowledge of the facts, be better able to verify the complaint, nevertheless, the *Rule* does not make an exception on this account. This matter having been raised, I am constrained to conclude that the bill is defective. *United Brotherhood, etc., et al., v. Kennedy, et al,* 13 *Del. Ch.* 93, 115 *A.* 585.

Accordingly an order will be advised sustaining the demurrer on this single ground.