# NEW YORK ELECTRIC LINES COMPANY *v.* EM-PIRE CITY SUBWAY COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 63. Argued November 5, 6, 1914.—Decided November 30, 1914.

If it sufficiently appears that plaintiff in error raised the question of constitutionality of later legislation repealing that on which its contract rested, as impairing the obligation of that contract, and that the state court gave effect to the repealing legislation, the case is properly here under § 237, Judicial Code.

Under such conditions, it is the duty of this court to determine for itself whether a contract existed and whether its obligation has been impaired.

A street franchise which becomes operative upon the grant of the consent of the city is a property right. The grant is not a nude pact, but rests upon an obligation, expressly or impliedly assumed, to carry on the undertaking to which the grant relates. Such grants are made and received with the understanding that the recipient is protected by a contractual right from the moment the grant is accepted and during the course of performance as contemplated, as well as after that performance.

Grants of franchises are subject to the tacit condition that they may be lost by non-user or mis-user. The condition thus implied is a condition subsequent.

A franchise is given in order that it may be exercised for the public good, and failure to exercise as contemplated is ground for revocation and withdrawal.

An indefeasible interest only becomes vested under a franchise which has not only been duly granted, but has also been exercised in conformity with the grant.

Whether the authorities shall proceed in case of forfeiture of franchise for non-user or mis-user by *quo warranto* or, as in this case, by ordinance of repeal, the propriety of which can be adjudicated in a subsequent legal proceeding, is entirely a matter of state law.

In this case, *held* that as the right to use the streets was to be used within a reasonable time or lost, and as it never had been used, an ordinance of the City of New York of May 11, 1906, revoking the right of the plaintiff in error to lay wires in, and otherwise to use, the·

streets of New York under a permission granted in 1878 did not contravene the impairment of obligation clause of the Federal Constitution.

Judgment based on 201 N. Y. 329, affirmed.

THE facts, which involve rights and obligations of a corporation licensed by municipal ordinance to maintain electric wires, and the validity under the impairment of obligation clause of the Federal Constitution of a subsequent revocation of the license by the municipality owing to mis-user and non-user, are stated in the opinion.

*Mr. Alton B. Parker* and *Mr. J. Aspinwall Hodge*, with whom *Mr. Henry A. Gildersleeve* was on the brief, for plaintiff in error:

Relator's permit of 1883 was an irrevocable contract.

Performance was unnecessary for the creation of this property right; there was, however, performance which would have been complete but for the acts of the State and city. Acts of 1848, ch. 265; 1853, ch. 471; 1873, ch. 335; 1881, ch. 483; 1884, ch. 534; 1885, ch. 499; 1887, ch. 716; 1891, ch. 231; *Africa* v. *Mayor*, 70 Fed. Rep. 729; *Mayor* v. *Telephone Co.*, 115 Fed. Rep. 304; *Capital City Co.* v. *Tallahassee*, 186 U. S. 401; *Louisville* v. *Cumberland Tel. & Tel. Co.*, 224 U. S. 649; *New York* v. *Bryan*, 196 N. Y. 158; *Rochester* v. *Rochester Ry. Co.*, 182 N. Y. 99; *Detroit* v. *Detroit &c. Ry. Co.*, 64 Fed. Rep. 628; *S. C.*, 184 U. S. 368; *Ghee* v. *Northern Gas Co.*, 158 N. Y. 510; *Re Brooklyn El. R. R.*, 125 N. Y. 434; *Mayor* v. *Africa*, 77 Fed. Rep. 501; *Milhan* v. *Shape*, 27 N. Y. 611; *Owensboro* v. *Cumberland Tel. Co.*, 230 U. S. 58; *Pearsall* v. *Great Northern Ry.*, 73 Fed. Rep. 933; *S. C.*, 161 U. S. 646; *People* v. *O'Brien*, 111 N. Y. 1; *People* v. *Sturtevant*, 9 N. Y. 273; *N. Y. Edison Co.* v. *Willcox*, 207 N. Y. 86; *Woodhaven Gas Co.* v. *Deehan*, 153 N. Y. 528; *S. R. T. Co.* v. *New York*, 128 N. Y. 510; *Trustees* v. *Jessup*, 162 N. Y. 122; *Wright* v. *Nagle*, 101 U. S. 791.

This appeal necessarily involves a Federal question.

That the Federal question was raised and decided appears from the record and the opinion of the state court.

The Federal question was necessarily decided by the state court.

The relator accepted and acted upon its franchise.

The relator's franchise includes the right to lay wires in the streets for telephonic purposes, and to either use them or to lease them to others for such purposes.

By reversing its own construction of the relator's contract, the State of New York has impaired the obligation of the contract of the relator with the city and with the State.

The relator completed its formal acceptance of its franchise from the city by duly filing the map which the ordinance called for.

The relator has wholly complied with ch. 263 of the Laws of 1892 and no issue of non-compliance has ever been raised, nor can it be.

The relator is the real party in interest.

The application for the writ of mandamus was made in good faith.

The relator has lost no rights by alleged laches and no statute of limitations is involved herein.

The relator has never assigned its franchise.

The city is estopped to question the relator's franchise by the acceptance of taxes.

In support of these contentions see cases *supra* and *Adams Co.* v. *B. & M. R. Co.*, 39 Iowa, 507; *American Emigrant Co.* v. *Iowa Land Co.*, 52 Iowa, 323; *Atty. Gen'l* v. *P. & R. R.*, 6 Iredell, 456; *Audubon Co.* v. *American Emigrant Co.*, 40 Iowa, 460; *Brandriff* v. *Harrison*, 50 Iowa, 164; *Central &c. Co.* v. *Averrill*, 199 N. Y. 128; *Chambers* v. *Baltimore and Ohio R. Co.*, 207 U. S. 142; *Commercial Power Co.* v. *Tacoma*, 17 Washington, 670; *Curran* v. *Arkansas*, 15 How. 302; *Dorr* v. *Esders*, 112

App. Div. 897; *Douglas* v. *Kentucky*, 168 U. S. 488, 502; *Eichner* v. *Met. St. R. R.*, 114 App. Div. 247;·*Franchise Tax Cases*, 174 N. Y. 417; *Furman* v. *Nichol*, 8 Wall. 44, 56;.*Gelpcke* v. *Dubuque*, 1 Wall. 175; *Gumbes* v. *Hicks*, 116 App. Div. 120;.*Hess* v. *N. Y. Underground Telegraph Co.*, N. Y. Register,.Jan. 25, 1887; *James* v. *Signell*, 60 App. Div. 75; *Jersey City Ry. Co.* v. *Passaic*, 68 N. J. L. 110; *In re Long Acre Co.*, 51 Misc. 407; *S. C.*, 188 N. Y. 361; *Los Angeles* v. *Water Works Co.*, 177 U. S. 570, 576; *Louisiana* v. *Pillsbury*, 105 U. S. 278, 294; *McCullagh* v. *Reby*, 9 N. Y. Supp. 361; *Muhlker* v. *N. Y. & H. R. R.*, 197 U. S. 544, 570; *Murdock* v. *City of Memphis*, 20 Wall. 590; *Northern Pacific Ry.* v. *Boyd*, 228 U. S. 482; *Peck* v. *Burr*, 10 N. Y. 294; *Lodes* v. *Health Dept.*, 189 N. Y. 187; *N. Y. Electric Lines* v. *Ellison*, 115 App. Div. 254; *S. C.*, 188 N. Y. 531; *N. Y. Electric Lines* v. *Squire*, 14 Daly, 184; *S. C.*, 107 N. Y. 593;.*S. C.*, 145 U. S. 175; *People* v. *W. & D. R. R.*, 128 N. Y. 240; *Philadelphia Fire Ass'n* v. *New York*, 119 U. S. 110, 116; *Pollitz* v. *Wabash R. R.*, 207 N. Y. 113; *Roby.* v. *Colehour*, 146 U. S. 153; *Water Co.* v. *Rochester*, 176 N. Y. 36; *St. Louis* v. *West. Un. Tel. Co.*, 148 U. S. 92;. *Sauer* v. *New York*, 206 N. Y. 536; *Simplot* v. *Dubuque*, 49 Iowa, 630; *Sullivan* v. *Texas*, 207 U. S. 416, 423; *Traction Co.* v. *North Arlington*, 67 N. J. L. 162; *Walter A. Wood Co.* v. *Skinner*, 139 U. S. 293; · Laws of 1892, ch. 263; Laws of 1899, ch. 712; Transportation Law, § 140.

*Mr. Edmund L. Mooney*, with whom *Mr. Charles T. Russell* and *Mr. Frederick A. Card* were on the brief, for defendant in error:

The appeal should be dismissed as not involving a Federal question.

No Federal question was raised or decided.

If any Federal question was raised, its decision was not necessary to judgment.

Non-user and abandonment is a non-Federal question.

There is no existing demand, occupation is not assured, public interests do not require construction; all these are non-Federal questions.

This proceeding is solely to enable relator to promote a telephone business, which was beyond the scope of the permission granted.

Relator was incorporated to conduct a subway conduit business, not a telephone business.

Declarations and disclaimers in previous litigations and acts of the parties furnish practical construction of the franchise.

The permission granted to relator by resolution of Common Council of April 10, 1883, was not accepted and acted upon in fact, and is no longer in force.

The attempted transfer of the franchise to the Great Eastern Co. was a breach of condition contained in the resolution of permission.

The permission or the secondary franchise was lost by non-user and abandonment.

Assuming that a formal acceptance would have been sufficient, the acceptance in writing of the permission was not a complete formal acceptance, in the absence of the filing of a *bona fide* map, specifying amount and position of spaces.

The decision of the Federal question, if such be properly raised, does not control the whole case. Other points warrant affirmance.

A party applying for a peremptory writ of mandamus admits the truth of the allegations in the opposing affidavits.

The relator is not the real party in interest.

The application is not made in good faith.

The relator lost whatever right it had by laches.

In support of these contentions, see cases cited by plaintiff in error which can be distinguished and *In re Bingham-*

*ton Bridge*, 3 Wall. 51; *Boise Artesian Co.* v. *Boise City*, 230 U. S. 84; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116; *Castillo* v. *McConnico*, 168 U. S. 674; *Chicago City Ry. Co.* v. *Storey*, 73 Illinois, 541; *New York* v. *N. Y. Refrigerating Co.*, 146 N. Y. 210; *City Ry. Co.* v. *Citizens St. Ry. Co.*, 166 U. S. 557; *Coosaw Mining Co.* v. *South Carolina*, 144 U. S. 550; *De Saussure* v. *Gaillard*, 127 U. S. 216; *Delaware, L. & W. R. R. Co.* v. *Oswego*, 92 N. Y. App. Div. 551; *Dewey* v. *Des Moines*, 173 U. S. 193; *Endowment Assn.* v. *Kansas*, 120 U. S. 103; *Eustis* v. *Bolles*, 150 U. S. 361; *City Ry. Co.* v. *Galveston City St. Ry.*, 63 Texas, 529; *Harshman* v. *Bates County*, 92 U. S. 569; *Hulbert* v. *Chicago*, 202 U. S. 275; *Insurance Co.* v. *Dutcher*, 95 U. S. 269; *Johnson* v. *N. Y. &c. Co.*, 187 U. S. 491; *Layton* v. *Missouri*, 187 U. S. 356; *Leathe* v. *Thomas*, 207 U. S. 93; *Louisville Trust Co.* v. *City of Cincinnati*, 76 Fed. Rep. 296; *Matter of Taylor*, 117 N. Y. App. Div. 248; *Moore* v. *Mississippi*, 21 Wall. 636; *New York Cent. R. R.* v. *New York*, 186 U. S. 269; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *Nicoll* v. *Sands*, 131 N. Y. 19; *Otis* v. *Oregon S. S. Co.*, 116 U. S. 548; *People* v. *Adirondack Ry.*, 160 N. Y. 225; *People* v. *Collis*, 6 N. Y. App. Div. 467; *People* v. *French*, 31 Hun (N. Y.), 617; *People* v. *Rome, Watertown &c. Co.*, 103 N. Y. 95; *Althause* v. *Giroux &c. Co.*, 122 App. Div. 617; *Connolly* v. *Board of Education*, 114 App. Div. 1, aff'd 187 N. Y. 535; *Durant* v. *Jeroloman*, 139 N. Y. 14; *Hunter* v. *National Park Bank*, 122 App. Div. 635; *Lehmaier* v. *Interurban St. Ry. Co.*, 85 App. Div. 407; *McMackin* v. *Board of Police*, 46 Hun, 296; *Millard* v. *Chapin*, 104 N. Y. 96; *Nelson* v. *Marsh*, 82 App. Div. 571, aff'd 178 N. Y. 618; *Phelps* v. *Delaware Common Pleas*, 2 Wend. 257; *Pumpyansky* v. *Keating*, 168 N. Y. 390; *Sherwood* v. *Board of Canvassers*, 129 N. Y. 360; *Postal Tel. Co.* v. *Baltimore*, 156 U. S. 210; *Seeberger* v. *McCormack*, 175 U. S. 274; *Seymour* v. *Warren*, 179 N. Y. 1; *State* v. *Board of Liquidation*, 98 U. S. 140; *Telluride*

*Power Co.* v. *Rio Grande R. R. Co.,* 187 U. S. 569; *The Victory,* 6 Wall. 382; *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86; *Winona &c. R. Co.* v. *Plainview,* 143 U. S. 371; *Woolsey* v. *Funke,* 121 N. Y. 87; *Yazoo & M. R. Co.* v. *Adams,* 180 U. S. 41; *Zadig* v. *Baldwin,* 166 U. S. 485.

By leave of court *Mr. Alfred B. Cruikshank* filed a brief as *amicus curiæ,* on behalf of Clifford L. Middleton.

MR. JUSTICE HUGHES delivered the opinion of the court.

This is a writ of error to review the denial by the state court of an application for a writ of peremptory mandamus directing the Empire City Subway. Company (Limited) to lease space in its conduits in the City of New York to the plaintiff in error.

In the year 1884, the legislature of the State of New York required that 'all telegraph, telephonic and electric light wires' in certain cities—New York and Brooklyn—should be placed under the surface of the streets (Laws of 1884, chap. 534). Under the authority of a statute passed in the next year (Laws of 1885, chap. 499, amended by Laws of 1886, chap. 503), the Board of Commissioners of Electric Subways adopted a plan by which the City of New York should enter into a contract with a company to construct the necessary subways, etc., which other companies operating electrical wires should be compelled to use, paying therefor a reasonable rent. Under contracts, made accordingly and ratified by the legislature (Laws of 1887, chap. 716), subways, etc., were constructed by the Consolidated Telegraph & Electrical Subway Company. The board first-mentioned was succeeded by the Board of Electrical Control (Laws of 1887, chap. 716); and, in 1890, the subways, conduits and ducts for low tension conductors, which had been thus provided, were transferred to the Empire City Subway Company (Limited), the de-

fendant in error. The latter company, by contract with
the Board and the City, made in 1891 under legislative
authority (Laws of 1891, chap. 231), agreed to build,
maintain and operate subways, etc., as specified—it being
provided that spaces therein, upon application, should be
leased 'to any company or corporation having lawful
power to operate telegraph or telephone conductors in
any street' in the City of New York.

· The plaintiff in error, The New York Electric Lines
Company, claiming to be entitled to space in these sub-
ways, made application therefor on or about June 10, 1910.
The request was refused and the present proceeding for a
peremptory mandamus was brought. The assertion of
right rested upon a permission granted by the City of
New York, through its Common Council, to the plaintiff
in error, on April 10, 1883, to lay electrical conductors in
the City's streets. This permission, the City by its Board
of Estimate and Apportionment, which had succeeded to
the powers of the former Common Council in the matter,
had formally revoked by a resolution adopted on May 11,
1906, reciting that whatever rights the company had se-
cured under the permission in question had long since been
forfeited by non-user. The Court of Appeals of the State,
holding that the Board of Estimate and Apportionment
had this power of revocation, and had duly exercised it,
affirmed an order refusing the writ of mandamus. *Matter
of New York Electric Lines Co.,* 201 N. Y. 321. The plain-
tiff in error insists that the resolution thus sustained was
an unconstitutional impairment of the obligation of its
contract with the City.

We think that it sufficiently appears that this question
was raised in the state court, and as the state court gave
effect to the repealing resolution the case is properly here.
It is therefore the duty of this court to determine for itself
whether a contract existed and whether its obligation has
been impaired. *Douglas* v. *Kentucky,* 168 U. S. 488, 502;

*St. Paul Gas Light Co.* v. *St. Paul,* 181 U. S. 142, 148; *Grand Trunk Western Ry. Co.* v. *South Bend,* 227 U. S. 544, 551; *Atlantic Coast Line* v. *Goldsboro,* 232 U. S. 548, 556; *Louisiana Railway & Navigation Co.* v. *New Orleans,* decided this day, *ante,* p. 164.

The plaintiff in error was incorporated in the year 1882, under a general law of the State of New York (Laws of 1848, chap. 265, as amended by Laws of 1853, chap. 471). Its certificate of incorporation stated, among other things, that it was incorporated for the purpose of 'owning, constructing, using, maintaining and leasing lines of telegraph wires or other electric conductors for telegraphic and telephonic communication and for electric illumination, to be placed under the pavements of the streets  .  .  .  of the Cities·of New York and Brooklyn' and 'for the purpose of owning franchises for laying and operating the said lines of electric conductors.'   Chapter 483 of the Laws of 1881 had authorized any company so incorporated 'to construct and lay lines of electrical conductors underground in any city,' provided that it 'first obtain from the common council'·of such city the 'permission to use the streets' for the purposes set forth.   The permission in question, which as already stated, was granted by the Common Council of the City of New York, on April 10, 1883, was (omitting parts not here material) as follows:

"*Resolved,* that permission be and hereby is granted to the New York Electric Lines Company, to lay wires or other conductors of electricity in and through the streets, avenues and highways of New York City and to make connections of such wires or conductors underground by means of the necessary vaults, test boxes and distributing conduits, and thence above ground with points of electric illuminations or of telegraphic or telephonic signals in accordance with the provisions of an ordinance  .  .  .  approved  .  .  .  December 14, 1878."

It was also resolved that the Company should not

'transfer or dispose of the franchise hereby granted without the further authority of the Common Council.'

On April 24, 1883, the plaintiff in error presented to the Common Council, and the latter spread upon its minutes, a formal acceptance of the permission, which after the recitals states:

"Now, therefore, the said New York Electric Lines Company by these presents accepts the said franchise as contained in the ordinance and resolutions adopted by the Honorable the Board of Aldermen, April 10, 1883, and agrees to, assumes and obligates itself in the observance of all the requirements, provisions, restrictions, conditions and limitations contained in the said last mentioned ordinance as adopted April 10, 1883, as well also as to the provisions, conditions and obligations of the said general ordinance approved by the Mayor December 14, 1878."

The ordinance of 1878, referred to, regulated the method of laying wires under the streets, and provided that within six months after the grant of permission, grantees should file with the County Clerk 'maps, diagrams and tabular statements indicating the amount and position of the spaces proposed to be occupied by them.' In May, 1883, the plaintiff in error, in asserted compliance with the ordinance, filed a map, diagrams and statement. It is alleged in the affidavits presented on the application for mandamus that the plaintiff in error secured inventions and patent rights, that it had an office and factory, that it prosecuted experimental work in relation to its project, and expended in this way large sums of money. But, in the actual construction of conduits or laying of wires, nothing was done prior to the legislation of 1885 and 1886, which as we have seen provided for a comprehensive plan for the building of subways in which electrical conductors should be placed.

Section 3 of the act of 1885 expressly made it obligatory upon any company 'operating or intending to operate elec-

trical conductors,' and desiring or being required to place its conductors underground, to file with the board of commissioners a 'map or maps, made to scale,' showing the proposed plan of construction of its underground electrical system and 'to obtain the approval by said board of said plan' before any underground conduits should be constructed. The plaintiff in error did not submit a plan to the board as required by the statute. In July, 1886, it applied to the Commissioner of Public Works for a permit to make the necessary excavations in the streets for the purpose of laying conductors, and, on the application being denied petitioned for a writ of peremptory mandamus to direct the Commissioner to grant it. It was insisted in its petition in that proceeding that it had 'never operated or intended to operate electrical conductors,' its intention having always been 'to lease to other persons, natural or corporate, all of its electrical conductors, and not to operate itself any' of them; that the acts of 1885 and 1886 (above mentioned), relating to the construction of subways, did not apply to the plaintiff in error; and that, if they were applicable, they violated the Federal Constitution being an impairment of its contract with the City and operating to deprive the plaintiff in error of its property without due process of law. The state court held that the statutes in question were applicable to the plaintiff in error, and were constitutional, and refused the mandamus. *People, ex rel. New York Electric Lines Co.* v. *Squire*, 107 N. Y. 593.

This court affirmed the judgment (*id.*, 145 U. S. 175), saying (pp. 187, 188):

"In no sense of the term do we think it can be safely averred that the acts of 1885 and 1886 are not applicable to the relator. . . . Neither can it be said that the acts of 1885 and 1886 have a retroactive effect, at least so far as the relator is concerned, since whatever rights it obtained under the ordinance of 1883, which it accepted

as the basis of the contract it claims to have entered into, were expressly subject to regulation, in their use, by the highest legislative power in the State acting for the benefit of all interests affected by those rights and for the benefit of the public generally, so long as the relator's essential rights were not impaired or invaded. *New Orleans Gas Company* v. *Louisiana Light Company,* 115 U. S. 650; *Stein* v. *Bienville Water Supply Company,* 141 U. S. 67.''

And conceding for the purpose of the discussion, but 'without deciding,' that the plaintiff in error had a contract with the City 'for the laying of its wires, and the construction of its underground electrical system,' this court reached the conclusion that its rights had in no way been impaired by the legislation under review.

This decision was rendered in May, 1892. Meanwhile, pursuant to the statutes above mentioned, a plan of construction had been adopted by the board charged with that duty, subways had been built, and the defendant in error had entered into its contract to maintain and operate them for low tension conductors, as specified, including telegraph and telephone conductors. But for fifteen years after the final decision in the case cited no application was made by the plaintiff in error for space in these subways. The first application for such space was made in June, 1907, and was not granted.

Nor, during this long period, was any attempt made by the plaintiff in error either to build conduits or to place wires under the City's streets, save that in December, 1905, it applied to the Commissioner of Water Supply, Gas and Electricity for a permit to open the streets for that purpose and, on its being denied, a proceeding was begun to obtain a peremptory writ of mandamus. This was refused, and the order to that effect was affirmed by the Court of Appeals of the State. *People, ex rel. New York Electric Lines Co.* v. *Ellison,* 188 N. Y. 523. The pertinent legislation and the subway contracts were reviewed and

the requirement that electrical conductors should be placed in conduits constructed in accordance with the adopted plan, instead of the plaintiff in error being permitted to build its own subways for such conductors, was sustained. In arriving at this result, it was again assumed that the plaintiff in error had a continuing right under the City's permission, but this question was expressly reserved (*id.*, p. 527), A writ of error sued out from this court was dismissed on motion of the plaintiff in error. 214 U. S. 529.

It was about the time when the last-mentioned proceeding was instituted that the City's permission was revoked (May 11, 1906); and the state court, in its opinion in the present case, said that the question 'remaining to be determined' was whether 'the relator, under the resolution of the common council of April, 1883, has the right, as a matter of law, to have its wires inserted in the ducts of the Empire City Subway Company, notwithstanding the revocation of such resolution.' Did a 'bare acceptance' of the permission operate to vest an irrevocable franchise? 201 N. Y. pp. 321, 329. This question was answered in the negative in the view that such a permission is 'a license merely, revocable at the pleasure of the city, unless it has been accepted and some substantial part of the work performed,' as contemplated by the permission, 'sufficient to create a right of property and thus form a consideration for the contract.'

The plaintiff in error challenges this view, insisting that by virtue of the City's permission it is the grantee of an irrevocable franchise in the City's streets; that this franchise was derived from the State; that when the consent of the City was given, as provided in the statute, the grant became immediately operative and could not thereafter be revoked or impaired by municipal resolution or ordinance; that the granted right, however named, is property,—and, as such, is inviolable; and that this position is

supported by numerous decisions both of the state court
and of this court, which are cited in the margin.[1]  Thus in
*Ghee* v. *Northern Union Gas Co.*, 158 N. Y. 510, 513, re-
ferring to the legal effect of the consent of the municipal
authorities under a statute empowering the corporation
to lay gas conduits in streets, on such consent, the court
said: "It operates to create a franchise by which is vested
in the corporation receiving it a perpetual and indefeasible
interest in the land constituting the streets of a munic-
ipality.  It is true that the franchise comes from the
State, but the act of the local authorities, who represent
the State by its permission and for that purpose, con-
stitutes the act upon which the law operates to create the
franchise."  And in *Louisville* v. *Cumberland Telephone
Co.*, 224 U. S. 649, 659, where a corporation was author-
ized to erect poles, etc., over the streets with the consent
of the General Council of the City, it was held that the
charter franchises became 'fully operative' when the
City's consent was obtained.  "Such a street franchise
has been called by various names—an incorporeal heredita-
ment, an interest in land, an easement, a right of way—
but, howsoever designated, it is property."  224 U. S.,
p. 661.  Again, in the recent case of *Owensboro* v. *Cumber-
land Telephone Co.*, 230 U. S. 58, 65, it was said: "That an

---

[1] *Milhau* v. *Sharp*, 27 N. Y. 611, 620; *People* v. *O'Brien*, 111 N. Y. 1,
38; *Suburban Rapid Transit Co.* v. *The Mayor*, 128 N. Y. 510, 520;
*People ex rel. Woodhaven Gas Co.* v. *Deehan*, 153 N. Y. 528, 532; *Ghee*
v. *Northern Union Gas Co.*, 158 N. Y. 510, 513; *City of Rochester* v.
*Rochester Railway Co.*, 182 N. Y. 99, 119; *City of New York* v. *Bryan*,
196 N. Y. 158, 164, 165; *New Orleans Gas Light Co.* v. *Louisiana Light
&c. Co.*, 115 U. S. 650, 660; *New Orleans Water Works Co.* v. *Rivers*,
115 U. S. 674, 680, 681; *Walla Walla* v. *Walla Walla Co.*, 172 U. S.
1, 9; *Detroit* v. *Detroit &c. Ry. Co.*, 184 U. S. 368, 394; *Louisville* v.
*Cumberland Telephone Co.*, 224 U. S. 649, 658, 663; *Grand Trunk Rail-
way Co.* v. *South Bend*, 227 U. S. 544, 552; *Owensboro* v. *Cumberland
Telephone Co.*, 230 U. S. 58, 65; *Boise Water Co.* v. *Boise City*, 230
U. S. 84, 90, 91; *Russell* v. *Sebastian*, 233 U. S. 195, 204.

ordinance granting the right to place and maintain upon the streets of the city poles and wires of such a company is the granting of a property right, has been too many times decided by this court to need more than a reference to some of the later cases." See also *Boise Water Co.* v. *Boise City,* 230 U. S. 84, 91. These municipal consents are intended to afford the basis of enterprise with reciprocal advantages, and it would be virtually impossible to fulfil the manifest intent of the legislature and to secure the benefits expected to flow from the privileges conferred, if, in the initial stages of the enterprise when the necessary proceedings preliminary to the execution of the proposed work are being taken with due promptness, or when the work is under way, the municipal consent should be subject to revocation at any time by the authorities,—not upon the ground that the contract had not been performed, or that any condition thereof, express or implied, had been broken, but because as yet no contract whatever had been made and there was nothing but a license which might be withdrawn at pleasure. Grants like the one under consideration are not nude pacts, but rest upon obligations expressly or impliedly assumed to carry on the undertaking to which they relate. See *The Binghamton Bridge,* 3 Wall. 51, 74; *Pearsall* v. *Great Northern Railway,* 161 U. S. 646, 663, 667. They are made and received with the understanding that the recipient is protected by a contractual right from the moment the grant is accepted and during the course of performance as contemplated, as well as after that performance. The case of *Capital City Light & Fuel Co.* v. *Tallahassee,* 186 U. S. 401, to which the defendant in error refers, is not opposed. There the complainant, upon the ground of an exclusive privilege, sought to enjoin a municipality from operating its own electric light plant; although ten years had elapsed since the complainant's grant, the complainant had done nothing whatever to establish an electric light business and under the

express terms of the statute the exclusive privilege had not attached (186 U. S. 410).

But, while the grant becomes effective when made and accepted in accordance with the statute and the grantee is thus protected in starting the enterprise, it has always been recognized that, as the franchise is given in order that it may be exercised for the public benefit, the failure to exercise it as contemplated is ground for revocation or withdrawal. In the cases where the right of revocation in the absence of express condition has been denied, it will be found that there has been performance at least to some substantial extent or that the grantee is duly proceeding to perform. And when it is said that there is vested an *inde-feasible* interest, easement, or contract right, it is plainly meant to refer to a franchise not only granted but exercised in conformity with the grant. (See cases cited *supra*.) It is a tacit condition annexed to grants of franchises that they may be lost by mis-user or non-user. *Terrett* v. *Taylor*, 9 Cranch, 43, 51; *Chicago Life Insurance Co.* v. *Needles*, 113 U. S. 574, 580; *Given* v. *Wright*, 117 U. S. 648, 656. The condition thus implied is, of course, a condition subsequent. The same principle is applicable when a municipality under legislative authority gives the permission, which brings the franchise into being; there is necessarily implied the condition of user. The conception of the permission as giving rise to a right of property in no way involves the notion that the exercise of the franchise may be held in abeyance for an indefinite time, and that the right may thus be treated as a permanent lien upon the public streets, to be enforced for the advantage of the owner at any time, however distant. Although the franchise is property, 'it is subject to defeasance or forfeiture by failure to exercise it (*People* v. *Broadway R. R. Co. of Brooklyn*, 126 N. Y. 29), or by subsequent abandonment after it has been exercised (*People* v. *Albany & Vermont R. R. Co.*, 24 N. Y. 261).' If 'no time is prescribed, the

franchise must be exercised within a reasonable time.'
*City of New York v. Bryan*, 196 N. Y. 158, 164.

It follows that where the franchise has not been exercised within a reasonable time in accordance with the condition which inheres in the nature of the grant, its revocation upon this ground cannot be regarded as an impairment of contractual obligation.   The privileges conferred may be withdrawn by such methods of procedure as are consistent with established legal principles.   This rule, frequently recognized in cases where franchises have been abused or misemployed (see *Chicago Life Insurance Co. v. Needles, supra; Farmers Loan & Trust Co.* v. *Galesburg*, 133 U. S. 156, 179; *New Orleans Water Works Co.* v. *Louisiana*, 185 U. S. 336, 347; *Columbus* v. *Mercantile Trust &c. Co. of Baltimore*, 218 U. S. 645, 663; Dillon, Munic. Corp., 5th ed., § 1311), must also be applicable where they have been neglected, that is, have not been used in due time.   Whether in such cases, where there has been a municipal permission for use of streets, the State shall proceed directly by *quo warranto*, or whether it shall authorize the municipality to pass a resolution or ordinance of repeal or revocation leaving the propriety of its course to be determined in an appropriate legal proceeding in which the default of the grantee may be adjudicated, is a question of state law with which we are not concerned. The resolution in such case serves to define the attitude of the public authorities, and to revoke the permission where sufficient ground exists for such revocation.   Whether there has been such a mis-use or non-exercise of the franchise as to warrant its withdrawal is a matter for judicial consideration.

In the present case, the plaintiff in error, insisting upon its continuing right, despite the resolution of revocation, applied for a peremptory writ of mandamus to compel the Subway Company—a quasi-public instrumentality— to furnish the desired space in its conduits.   It had been

held by the state court that this was an available remedy where a company had 'lawful power' to operate its conductors in the City's streets and had been denied the space which the Subway Company by its contract with the City had agreed to give. *Matter of Longacre El. L. & P. Co.,* 188 N. Y. 361. The question of 'lawful power' of the plaintiff in error was considered and the application refused. It is true that it was stated that there was a license only which by reason of non-performance had not ripened into a contract right, but it is equally true that the non-performance shown was available to defeat that right, assuming it to have been created at the time of the grant, and to make the resolution of revocation—which the state court has held was adopted under state authority—entirely proper.

For a long period of years after the final determination of the validity of the statutes authorizing a comprehensive scheme of subway construction, and after the contract with the Subway Company had been made, the plaintiff in error made no attempt to secure space and to exercise the franchise now claimed. It treated that right as susceptible of practically indefinite retention unused. In the circumstances disclosed, its excuses are unavailing. The right conferred, assuming it to be a contract right, was to be used within a reasonable time or lost. In view of the state of the case as to non-exercise, it cannot be said that its constitutional right has been infringed.

*Judgment affirmed.*