322 People ex rel. N. Y. C. R. R. Co. *v.* Pub. Serv. Comm.

Third Department, September, 1920. [Vol. 193.

The People of the State of New York ex rel. New York Central Railroad Company and Erie Railroad Company, Relators, *v.* The Public Service Commission of the State of New York, Second District, and Charles B. Hill and Others, as Public Service Commissioners of the State of New York, Being Members of Said Board, Second District, and Pennsylvania Railroad Company and Delaware, Lackawanna and Western Railroad Company, Respondents.

(Proceeding to Revoke Certificate of Convenience and a Necessity Heretofore Issued to the Frontier Electric Railway Company.)

The People of the State of New York ex rel. New York Central Railroad Company and Erie Railroad Company, Relators, *v.* The Public Service Commission of the State of New York, Second District, and Charles B. Hill and Others, as Public Service Commissioners of the State of New York, Being Members of Said Board, Second District, and Pennsylvania Railroad Company and Delaware, Lackawanna and Western Railroad Company, Respondents.

(Proceeding by Pennsylvania Railroad Company and Delaware, Lackawanna and Western Railroad Company to Acquire the Capital Stock of the Frontier Electric Railway Company.)

Third Department, September 8, 1920.

Railroads — when certificate of "convenience and necessity" should not be revoked because electric railroad proposes to carry freight — duty of such railroad under Railroad Law — power of Public Service Commission to authorize purchase of stock by other railroads — when court will not interfere with decision of Public Service Commission.

Where the former Board of Railroad Commissioners granted a certificate of "convenience and necessity" to an electric railroad corporation which was to operate chiefly upon a private right of way, and said corporation was authorized by its charter and the underlying statute to take and carry both passengers and property and to receive compensation therefor, the granting of said certificate impliedly involved the duty of performing

both of said functions. Moreover, a failure to perform all of the functions of a general railroad such as was contemplated by the charter would subject such corporation to a forfeiture of its franchise.

Hence, it was proper for the Public Service Commission subsequently to deny the petition of other railroad companies asking for the revocation of said certificate of " convenience and necessity " formerly issued, merely because the corporation to which the certificate was issued having carried passengers only, now proposes to also carry freight, where it appears that the time for the construction of the railroad by said corporation has been extended and that there is now need for greater facilities in the handling of freight between its terminal points.

The mere fact that the testimony before the Board of Railroad Commissioners was limited to showing the public " convenience and necessity " as it related to passenger traffic did not have the effect of limiting the powers of the corporation or its duty to respond to the other obligation of its charter to carry freight.

As said railroad corporation under the certificate previously granted has the right to construct and operate its railroad under the provisions of the Railroad Law, the Public Service Commission properly permitted the purchase of the capital stock of said company by other railroad companies for the purpose of enabling the latter which operated trunk lines to make use of said corporate powers for the proper handling of freight in and through a highly congested district, even though it might operate to decrease the revenues of other railroads.

Where it has been made to appear to the Public Service Commission that there is a public necessity that a certain railroad render both passenger and freight service, it is not the province of the Appellate Division to interfere with the legitimate exercise of the power delegated to the Public Service Commission.

CERTIORARI issued out of the Supreme Court and attested on the 7th day of September, 1918, directed to the Public Service Commission of the State of New York, Second District, and others, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in denying the petitions of the Erie Railroad Company and the New York Central Railroad Company, under section 10 of the Railroad Law, for the revocation of the certificate of convenience and a necessity heretofore issued to the Frontier Electric Railway Company.

Certiorari issued out of the Supreme Court and attested on the 7th day of September, 1918, directed to the Public Service Commission of the State of New York, Second District, and others, commanding them to certify and return to the office of

the clerk of the county of Albany all and singular their proceedings had in granting the application of the Pennsylvania Railroad Company and the Delaware, Lackawanna and Western Railroad Company, pursuant to subdivision 2 of section 54 of the Public Service Commissions Law, for leave to acquire the capital stock of the Frontier Electric Railway Company.

The Pennsylvania Railroad Company and the Delaware, Lackawanna and Western Railroad Company were permitted to intervene and they were made parties defendant in both of said proceedings by separate orders of the court granted on May 9, 1919. The opinion rendered by the commission in granting the application under subdivision 2 of section 54 of the Public Service Commissions Law (as amd. by Laws of 1914, chap. 220) for consent to acquire the capital stock of the Frontier Electric Railway Company is reported in *Matter of Pennsylvania R. R. Co.* (16 State Dept. Rep. 192).

*Maurice C. Spratt,* for the relator New York Central Railroad Company.

*Moot, Sprague, Brownell & Marcy* [*Herbert A. Taylor* and *S. Fay Carr* of counsel], for the relator Erie Railroad Company.

*O'Brien, Boardman, Parker & Fox* [*Edwin J. Freedman* and *A. B. Boardman* of counsel], for the respondents Pennsylvania Railroad Company and Delaware, Lackawanna and Western Railroad Company.

*Ledyard P. Hale* for the respondent Public Service Commission, Second District.

WOODWARD, J.:

These are certiorari proceedings to review the determination of the Public Service Commission of the State of New York, Second District, (1) in denying the petitions of the Erie Railroad Company and the New York Central Railroad Company for the revocation of the certificate of necessity and convenience of the Frontier Electric Railway Company, and (2) in granting the application of the Pennsylvania Railroad Company and the Delaware, Lackawanna and Western Railroad Company for leave to acquire the capital stock of the Frontier

Electric Railway Company. The record is voluminous, and the questions involved have been argued with great elaboration, but they involve few matters of importance to be considered on this review, as we are of the opinion that the determination of the Public Service Commission, within established rules of law and supported by evidence, is not to be superseded by the judgment of this court, even though we should be of opinion that a better disposition might have been made of the. matters involved. By stipulation of the attorneys, dated November 8, 1919, one return was made and filed herein with the same force and effect as if separate returns were made and filed.

The Frontier Electric Railway Company was incorporated on the 4th day of August, 1906, for the purpose of building and operating " a standard gauge railroad to be built for the most part on private right of way and to be operated by electricity as a motive power between the cities of Buffalo and Niagara Falls aforesaid, said cities being the respective termini of the said railroad." These facts were set forth in the petition of the Frontier Electric Railway Company to the Board of Railroad Commisioners under date of ·September . 3, 1906, and gave notice, of course, that it was the purpose of this corporation to construct a standard railroad, twenty-five miles in length, as stated in its certificate, duly published. It was further stated that the motive power to be used was to be electricity, but aside from this there was nothing to indicate that it was not to be a regular railroad for the transportation of persons and property. Upon the hearing before the Board of Railroad Commissioners, upon the application for a certificate of convenience and necessity, the testimony was devoted to showing the need for an electric railroad operating upon a private right of way to accommodate the passenger traffic between Buffalo and Niagara Falls, it being contended that the International Railroad Company, operating upon the public highways, was unable to meet the demands of the public. It appears from the record then made that the Frontier Electric Railway Company was designed to supplement the International Railroad Company, and this latter corporation caused it to appear that it was to be interested in the enterprise. We do not understand that there is any contention that

there was any bad faith in this application; that it was not then the purpose of making this Frontier Electric Railway Company an auxiliary of the International Railroad Company system. There does not appear to have been any specific disclaimer of a purpose to make use of the railroad for purposes other than the carrying of passengers, and it might be questioned whether a corporation organized under the General Railroad Law, and endowed with the right of eminent domain, had a right to so limit its activities if the public convenience required its use for freight-carrying purposes. Under subdivision 7 of section 8 of the Railroad Law this corporation had the right " to take and convey persons and property on its railroad by the power or force of steam or of animals, or by any mechanical power, except where such power is specially prescribed in this chapter, and to receive compensation therefor." (See, also, Railroad Law [Gen. Laws, chap. 39; Laws of 1890, chap. 565], § 4, subd. 7, as amd. by Laws of 1892, chap. 676.) This constituted a part of its franchise powers; it had a right to " take and convey * * * property on its railroad," and " as the franchise is given in order that it may be exercised for the public benefit " (*First Construction Co.* v. *State of New York,* 221 N. Y. 295, 318; *New York Electric Lines* v. *Empire City Subway,* 235 U. S. 179, 194), it would seem to follow that where a corporation is authorized by its charter, and the underlying statute, to take and carry both passengers and property and to receive compensation therefor, the granting of the certificate of convenience and necessity impliedly involved the duty of performing both of these functions. " ' Grants like the one under consideration are not nude pacts, but rest upon obligations expressly or impliedly assumed to carry on the undertaking to which they relate,' " and " ' the same principle is applicable when a municipality under legislative authority gives the permission which brings the franchise into being; there is necessarily implied the condition of user.' " (*First Construction Co.* v. *State of New York, supra,* 317, 319.) And as the grant is of the right to carry " persons and property " there must of necessity be the implied obligation to perform all of the conditions of the grant; there is no presumption that the State would have granted a franchise such as was given to the Frontier Electric Railway Company, for the exclusive carrying of passengers, and a failure

to perform all of the functions of a general railroad, such as was contemplated by its charter, would subject the corporation to a forfeiture of its franchise. (*New York Electric Lines v. Empire City Subway*, 235 U. S. 179, 194, and authorities there cited; *First Construction Co. v. State of New York, supra,* 317.) The fact that the testimony before the Board of Railroad Commissioners was limited to showing the public convenience and necessity as it related to the passenger traffic did not have the effect of limiting the powers of the corporation, or its duty to respond to the obligations of its charter, nor did it justify the relators in withdrawing from the proceedings, if they desired to be heard upon the propriety of permitting the construction of this railroad. They must be presumed to have known the law, and concededly they were present when the matter was before the Board of Railroad Commissioners and abandoned the matter when they reached the conclusion that the proposed railroad was to be used for passengers only. If the public convenience and a necessity existed for the construction of the Frontier Electric Railway Company in 1906, and the evidence before the Board of Railroad Commissioners would seem to justify the conclusion, the order was properly made for the granting of the certificate required, and the obligation rested upon the corporation to perform the duties of its franchise even though the relators were willing it should avoid a part of them. We do not think the relators are in a position to suggest that they did not have their day in court upon the propriety of the granting the certificate, or that they have any standing to urge its abrogation because it now appears that there is a purpose to make use of the corporate powers of the Frontier Electric Railway Company to facilitate the movement of freight in one of the most congested districts in the country. If the railroad had been constructed in the years immediately following 1906 there is little doubt that in a proper proceeding the Frontier Electric Railway Company could have been compelled to carry freight as well as passengers, even though it had been made to appear that there was no such compelling necessity as would have justified the granting of the certificate for freight-carrying purposes only. The Legislature has, by various acts, extended the time for the construction of the railroad and the exercise of its corporate

**328**  PEOPLE EX REL. N. Y. C. R. R. Co. *v.* PUB. SERV. COMM.

Third Department, September, 1920.          [Vol. 193.

powers down to the year 1921 (Laws of 1911, chap. 523; Laws of 1914, chap. 411; Laws of 1917, chap. 539; Laws of 1919, chap. 51), and at the hearings here under review the evidence clearly indicates that there is need for greater facilities in the handling of freight between the terminal points of the Frontier Electric Railway Company. This fully justified the Public Service Commission, as successor to the powers of the Board of Railroad Commissioners, in denying the application of the relators to set aside the original certificate of convenience and necessity.

It follows that if the Frontier Electric Railway Company has the right to construct and operate its railroad under the provisions of the Railroad Law, as above indicated, there is no very good reason why the Public Service Commission should refuse to permit of the purchase of the capital stock of such railroad company by the Pennsylvania Railroad Company and the Delaware, Lackawanna and Western Railroad Company, for the purpose of enabling these corporations, operating trunk lines of railroad, to make use of its corporate powers for the proper handling of freight in and through a highly congested district, even though this should operate to decrease the revenues of the relators. The Frontier Electric Railway Company will rest under the obligation of properly caring for the passenger traffic, as well as the handling of freight, and its owners will purchase the stock knowing that they are undertaking a public service which " is due to the State from which the privilege proceeds " (*Pennsylvania Gas Co.* v. *Public Service Comm.*, 225 N. Y. 397, 409), and as it has now been made to appear that there is a public necessity for both of these services, it is not the province of this court to interfere with the legitimate exercise of the powers delegated to the Public Service Commission.

We are not impressed with the seriousness of the alleged changes in the route of the railroad, nor of the many minor objections raised. There appears to have been a practical working out of the problem of proper railroad transportation in and around the city of Buffalo. It may be that individuals are to be profited by the solution of this problem; possibly that there has not been that frankness in all of the proceedings which an advancing ethical sentiment would approve; but we

are unable to discover any reasonable ground for disapproving the practical result which is to be accomplished, and it may be that the disadvantages feared by the relators may be fully compensated in a freer movement of the commerce which centers in and around the territory to be served by the Frontier Electric Railway Company.

The orders of the Public Service Commission should all be sustained and the writs dismissed, with fifty dollars costs and disbursements.

Determination unanimously confirmed, and writs dismissed, with fifty dollars costs and disbursements.