# CHARLESTON.

BLUEFIELD WATER WORKS AND IMPROVEMENT COMPANY *v.*
PUBLIC SERVICE COMMISSION.

Submitted November 1, 1921.　Decided December 14, 1921.

1. PUBLIC UTILITIES—*True Basis for Rate Making—Value of Investment.*

    The true basis for rate making purposes for a public utility is the actual fair value of its investment at the time used and useful in the business of furnishing service to the public. (p. 739).

2. SAME—*Original Cost Together with the History and Growth of the Utility and Value of Service Rendered Are Principal Elements Considered in Rate Making.*

    In the case of a public utility the original cost considered in connection with the history and growth of the utility, and the value of the service rendered, constitute the principal elements to be considered in connection with rate making for the services rendered the public.　(p. 740).

3. SAME—WATER WORKS—*Value of Property and Capital Employed by a Water Company in the Public Service.*

    In estimating the value of the property and capital employed by a water company in the public service, the value of the springs on lands purchased as a source of water supply, in proximity to the municipality served, as a general rule, is properly limited to the actual amount invested by the utility therein, particularly so when there are other sources of supply that may be obtained, as a river or other natural water course, and the municipality must be deemed to have been located with reference to such natural sources of water supply employed by the company.　(p. 740).

4. SAME—*Prior Earnings and Estimated Savings of Expense, etc.—Reasonable Rate of Income.*

    Fixing the rate of eight per cent on the fair value of the

property employed by such utility, determined as aforesaid, and based on prior earnings and estimated savings of expense etc. over previous years, after deducting therefrom all necessary · and proper operating expenses and taxes, to continue for a certain period, was within the power of the public service commission, as a means of subsequently determining what such rates should afterwards be on the subsequent report of the utility to enable it to earn such reasonable rate of income.   (p. 742).

5.  SAME—*Determining Value of Property so Employed in Public Service and the Rate it Should be Allowed to Earn, Must Depend Upon and be Controlled by its own Peculiar Facts.*

In determining the value of the property of a public utility so employed in the public service and the rate it should be allowed to earn, however, each case must depend upon and be controlled by its own peculiar facts, and the court will not interfere with the order of the public service commission unless the rate allowed is unreasonably low or unreasonably high.   (p. 743).

6.  SAME—*Additions to its Plant—No Right to a Rate Sufficient to Cover Cost of Expenditures in Advance of Actual Installation of such Extensions.*

A public utility has no right to a rate sufficient to cover the cost of expenditures for additions to its plant in advance of the actual installation of such extensions or additions and their employment in the public service.   (p. 743).

7.  SAME—*Public Service Commission—Extensions and Additions to Utility Plants.*

The public service commission may lawfully require a public utility to make extensions and additions to its plant when they are necessary to enable it to serve the public as required by law or the provisions of its contract or franchise. - (p. 744).

Original jurisdiction.

Petition to review and suspend the judgment of the Public Service Commission, in the Case of Bluefield Water Works and Improvement Company against Public Service Commission and others.

*Petition dismissed.*

*Sanders, Crockett, Fox & Sanders,* for petitioner.
*Russell S. Ritz,* for respondent, City of Bluefield.

MILLER, JUDGE:

We are petitioned to review and suspend the judgment of the Public Service Commission in this case, pronounced on September 7, 1921, on several grounds.

First; that the commission erroneously fixed the sum of $460,000.00 as the value of petitioner's plant for rate making purposes, instead of the sum of $900,000.00, which it contends was justified by the facts and the law controlling the commission in such cases. From the written opinion of the commission we find that it ascertained the value of the petitioner's property for rate making, "after maturely and carefully considering the various methods presented for the ascertainment of fair value and giving such weight as seems proper to every element involved and all the facts and circumstances disclosed by the record." The reports of Gallaher, engineer employed by the Public Service Commission, and Howson, engineer employed by the applicant, were given special consideration by the commission. Gallaher's report was that the physical condition of the property was 81%, showing a depreciation of 19%, and that by applying this percentage to applicant's gross investment, which, including the value of the plant of the Bluefield Valley Water Works Company owned by it and representing an investment of $25,000.00, amounted to about $500,000.00, left the present sound value of the property $405,000.00, and if to this sum should be added allowance of 10% for going value, and $10,000.00 for working capital, the fair value of applicant's property would be approximately $460,000.00. On the other hand the report of Howson, of the reproduction cost less depreciation, at pre-war prices, showed the value of the plant to be $624,548.00, approximately $625,000.00. And if properly adjusted by eliminating items in excess of those included in Gallaher's report, aggregating $204,000.00, and adding allowance for going value and working capital, the result would be $477,-500.00.

The contention of applicant's counsel, however, is that the commission should have determined the value of the plant with reference to the sum of $1,193,663.00, the cost of re-

production new less depreciation, at 1920 prices, as reported by Howson, or the sum of $900,000.00, recommended by him for rate making purposes, arrived at by dividing by two the aggregate of $625,000.00, found by Gallaher, based on reproduction new less depreciation at pre-war prices, and Howson's estimate based on 1920 prices. This estimate of Gallaher, it seems, was based on the average prices prevailing for the period of five years between 1910 and 1915.

In our opinion the commission was justified by the law and by the facts in finding as a basis for rate making the sum of $460,000.00. No fixed standard or formula applicable to all cases has yet been established by statute, judicial decisions, or by the judgment of public service commissions. Courts and commissions have, as in the instant case, been mainly controlled by the facts developed in each individual case. In our case of *City of Huntington* v. *Public Service Commission,* decided at the present term, we considered the true basis for rate making "the actual fair value of the investment at the time used and useful in the business of furnishing service to the public." This was held to be the true basis in the leading case of *Smyth* v. *Ames,* 169 U. S. 466. In that case the court said: "We do not say that there may not be other matters to be regarded in estimating the value of the property. What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience." That the basis of production new less depreciation can not be adopted with fairness to the utility or to the public is well illustrated in the case of *Steenerson* v. *Great Northern Railway Company,* 69 Minn. 353, where it is supposed that at the time the railroad was built rails cost $85.00 per ton and the present price was only $16.00 per ton, so that when built the railroad cost $40,000.00 per mile, and if built at the time of the controversy, it could be built for $12,-000.00 per mile. In such a case it would be unfair to the corporation to take as a basis for revaluation the reproduction cost new less depreciation. The Minnesota rule, so-called, has not received the approval of many of the state or federal courts. 2 Wyman on Public Service Corporations, sec. 1107 et seq. In our case of *Coal & Coke Ry. Co.* v. *Con-*

*ley,* 67 W. Va. 129, it is said: "It seems to be generally held that, in the absence of peculiar and extraordinary conditions, such as a more costly plant than the public service of the community requires, or the erection of a plant at an actual, though extravagant, cost, or the purchase of one at an exorbitant or inflated price, the actual amount of money invested is to be taken as the basis, and upon this a return must be allowed equivalent to that which is ordinarily received in the locality in which the business is done, upon capital invested in similar enterprises. In addition to this, consideration must be given to the nature of the investment, a higher rate being regarded as justified by the risk incident to a hazardous investment."

That the original cost considered in connection with the history and growth of the utility and the value of the services rendered constitute the principal elements to be considered in connection with rate making, seems to be supported by nearly all the authorities. Whitten on Valuation of Public Service Corporations, Ch. V., page 82 et seq. All the leading cases on the subject are there discussed. See also, 2 Wyman on Pub. Serv. Corp., Ch. XXXII, covering the same subject. In the case at bar, the commission, agreeable to these authorities, properly took into consideration all the elements going to establish the fair value of the petitioner's property on which it is entitled to earn a fair return, and we perceive no error therein justifying us in suspending its order on that ground. It has included a fair sum for going value, working capital, and the value of the utilities employed in connection therewith.

One of the points urged by counsel for the applicant is that it was entitled to have included in the estimated value of its plant the supposed value of certain water rights purchased and owned by it, being the springs on land purchased, its present chief source of water supply. There was included in the commission's estimate the actual amount invested in the subsidiary company, the Bluefield Valley Water Works Company, but the commission denied the right of the applicant to value these water rights beyond the actual cost of the land on which the springs are located. The applicant, to

fulfill the obligation of its franchise, was bound to obtain a supply of water from some source. The only source of its supply was these springs and the Bluestone River. The City of Bluefield, whose inhabitants it serves, was doubtless located with reference to these sources of water supply, and it, and not the utility company employing them, was entitled to the benefits of their relative location. The commission was not able to say, without much speculation, that these springs had any value beyond the value of the land on which they were located, which was included in the commission's estimate. In the case of *Sherman* v. *California-Michigan Land and Water Company,* Pub. Utility Rep. 1918D, page 93, a water rate case, the California Railroad Commission refused to allow anything for percolating waters, aside from the value of the water-bearing lands, considered for all available uses they might be put to, including the pumping of water therefrom. *In Re United Fuel Gas Company,* Pub. Utility Rep. 1920C, page 583, our Public Service Commission, in accordance with numerous decisions, held that the gas company, while entitled to charge a rate based on the value of the property it devoted to the public use, was not entitled to add to this a value brought about by appreciation of the land due to the discovery of large quantities of gas. The petitioner, in addition to the springs, had as a source of supply the Bluestone River, and it does not appear that the springs land had any advantages over the river, in point of economy, in supply or operation of its plant. It does appear that the springs owned, did not at all times furnish an adequate supply of water and would not do so without the erection of impounding tanks at great expense, whereas the river would furnish an ample supply of water, if the water therefrom was requisitioned in the proper way. In *San Diego Land Company* v. *National City,* 174 U. S. 739, the question of the right to include for rate making the supposed value of water rights was mooted, but not decided. And the same question was raised, but not decided, in *Denver* v. *Denver Union Water Company,* 246 U. S. 178, 193. The cases cited and specially relied on by petitioner, are *Fairbanks* v. *United States,* 181 U. S. 283, and *United States* v.

*Gettysburg Electric Railway Co.,* 160 U. S. 668.    These were condemnation cases, in which.the question of the value of franchises was considered.    For rate regulation the value of a franchise is not generally considered, such value being based on the capacity to earn profits; this for the reasons stated in 2 Wyman on Pub. Serv. Corp., § 1104, and considered by Mr. Justice Peckham in Willcox v. *Consolidated Gas Company,* 212 U. S. 19.

The next point which need be considered is that the rate fixed by the Public Service Commission, determined by adding to petitioner's monthly bills, based upon its rates per thousand gallons, a surcharge of 16% of the amount thereof, but not to apply to minimum rates, effective from and after applicant's meter readings in the month of August 1921, is inadequate.    The commission estimated that with this increase in rates, the applicant, out of the estimated gross income, based on prior earnings and estimated savings of expenses etc. over previous years, and after deducting therefrom all necessary and proper operating expenses and taxes, would be enabled to earn 8% on the fair value of its property fixed at $460,000.00, for a proper return and depreciation. This rate being based upon estimates of receipts, expenses and deductions, the commission did not undertake to make the rates permanent, but to remain effective until November 1, 1921, unless before that time suspended, and required the applicant, as soon as the information could be obtained, but not later than October 1, 1921, to furnish it certain specified data covering its income and operating expenses for the period of six months prior to June 30, 1921, and other data, which would enable the commission to modify or correct its estimate and make any further order in the case called for by the facts, these to be disclosed in order to enable it to deal justly with the applicant and the public served by it.

It is contended, however, that the rate of 8% on the value of the property, even as fixed by the order of the commission, is not adequate, but grossly inadequate, based on the actual value of the property when arrived at upon the proper basis. It is probably unnecessary to consider this question.    Assuming that the .correct amount is the present actual value of

the property devoted to the public use, the commission appears to have reached its conclusion by considering, not only the cost of reproduction new less depreciation, but all other proper elements throwing light upon the subject, and warranted by the facts and authorities, including the amount of the original investment, and the fact that the capital investment and the depreciation account carried on the books of the company was far less than that fixed by the commission as the value of the property for rate making purposes. The commission included in its estimate the actual cost, at prevailing prices, of improvements made since 1917, when the value of the property for rate making purposes was fixed at $360,-000.00.

It is argued that the rate of net return ought to be sufficient to induce capital to engage in such public enterprises, and that the estimated net income to cover return and depreciation will not be sufficient for that purpose in view of present prevailing rates of interest and incomes from other classes of business. But why not? Is not 6% net, clear of taxes and all operating expenses, including a sum equal to 2% for depreciation, as good or better than returns from most enterprises of a similar character? Legislatures and public service commissions exercising legislative functions are not to be tied down to fix rates of income. Every case must be controlled by its own facts, and in no case will the courts interfere unless the rate allowed is unreasonably low or unreasonably high. Beyond this courts have no right to interfere with the rate making authorities. *Lincoln Gas & Electric Light Co.* v. *City of Lincoln*, 250 U. S. 256; *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1; *Coal & Coke Railway Co.* v. *Conley, supra.*

That a public utility has no right to a rate sufficient to cover extensions or additions to its plant, we decided in the Huntington case cited. And we held in the same case that such a utility could not properly be allowed a rate which would give an income on investments for extensions and improvements not already made. In this case there was much evidence going to show that the applicant had not been performing faithfully the obligations of its franchise; that it had

been furnishing a very inadequate supply of water, of which much complaint had been made and lodged against it, to the extent that the commission felt called upon to order the applicant to · submit plans for extensions and improvements, to enable it to discharge its duty to the public under its franchise. These facts the commission had the right to take into consideration in prescribing rates.

The last point made by petitioner is that the commission ordered it to submit plans for the requisite improvements. That this action of the commission is fairly within the authority given it by the statute, there can ·be no doubt. Besides, the franchise, in evidence, requires it to do what the commission contemplates it shall do by the provisions of its order. So held in *City of Columbus* v. *Mercantile Trust & Deposit Co.*, 218 U. S. 645, approved in the more recent case of *New York Electric Lines Co.* v. *Subway Co.*, 235 U. S. 179.

For the foregoing reasons, we are of opinion to refuse to suspend the order of the Public Service Commission, but to affirm the same.

*Petition dismissed.*