FRANK FRANTZ, FRANK FRANTZ, JR., ORVILLE G. FRANTZ and
WALTER E. TEMPLEMAN,

*vs.*

TEMPLEMAN OIL CORPORATION, a corporation of the State of
Delaware.

*New Castle, July* 19, 1926.

*Caleb S. Layton*, of the firm of Marvel, Layton, Hughes &
Morford, and with him, *Warwick M. Downing*, of Denver, Col-
orado, for complainants.

*Williams S. Hilles*, and with him, *Charles F. Carnine*, of
Denver, Colorado, for defendant.

THE CHANCELLOR. The present motion cannot be sustained
unless the complainants occupy the status of stockholders or
creditors of the corporation, for it is only to persons occupying such
status that the statute accords the right to seek a receiver on the
ground of insolvency. While the answer denies that any of the

complainants sustain the relation of stockholder or creditor, yet the showing made by the affidavits warrants the conclusion for the present purpose that all the complainants are stockholders and that Frantz, Jr., is a creditor. Indeed Frantz, Jr., since the hearing on the motion, has recovered judgment against the defendant in the Superior Court of this State in the sum of $138,268.34.

The question of the complainants' status being disposed of in their favor on the present motion, I now turn to the evidence with the view of discovering whether the alleged facts have such reasonable probability in their favor and are of such character as to warrant the exercise of discretion in favor of the appointment of a receiver pendente lite.

In the first place, it is to be noted that the defendant company is a mere holding company. Its interests are identified with the oi business. But it is not engaged in the operation of any branch of that industry. A receiver pendente lite therefore will not in any manner interfere with the operations of an active producing or manufacturing enterprise. This being so, the reasons are manifest why the court will act with less reluctance in the exercise of the extraordinary relief asked for than it would were the proposition one to take from the chosen and presumably skilled managers of a rather technical enterprise the management and control and place it in the hands of an outsider with possibly less experience in the business and less aptitude for its management.

The evidence shows that the defendant as well as its subsidiary, an Oklahoma corporation of a similar name, is under the control of the officers of the Producers' and Refiners' Corporation, a corporation of the State of Wyoming. The complainants allege and support by affidavits, that the defendant has a claim against Edwin M. Bosworth and Company, a corporation of this State, for $50,000.00, and a claim against F. E. Kistler for $80,000.00, that the defendant under the control of Producers' and Refiners' Corporation refuses to proceed to collect these claims which will soon be outlawed by the statute of limitations, and that this refusal is due to the fact that Kistler, who is president of the Producers' and Refiners' Corporation, uses his controlling influence in that corporation to cause it to restrain the defendant, which is controlled by it, from proceeding against him as well as against the Bosworth

Company whose president is a director of the defendant. The defendant denies that Kistler owes money to it and, while it admits that the Bosworth Company owes it $50,000.00, alleges that it refuses to proceed against that company because it is insolvent and a judgment against it would be worthless. The complainants vigorously deny the insolvency of the Bosworth Company, producing copies of reports filed by it in Colorado showing a condition of solvency.

Inasmuch as these claims, if now valid, will soon be outlawed by the statute of limitations, the complainants contend that a receiver pendente lite ought to be appointed who might protect the defendant's rights which its dominating officers by reason of personal interest are disposed to let go by the board.

Other and more important considerations than the foregoing are advanced in support of the motion. These are as follows:

It appears that when the defendant was organized, the complainants Templeman and Orville G. Frantz owned certain oil and gas leases and properties; that they agreed with Kistler, the president of Producers' and Refiners' Corporation, to form the defendant corporation, to which each were to transfer certain specified oil and gas properties in consideration of a specific number of shares of the capital stock of the defendant to be issued to each in designated amounts. The shares were duly issued as agreed; but instead of having the defendant receive the titles the plan was agreed upon of having the titles placed in an Oklahoma corporation already in existence and bearing the same name as the defendant, and that the defendant should own all of the capital stock of the Oklahoma company. All the Oklahoma company's stock was transferred to the defendant company as agreed. Templeman and Frantz turn over to the Oklahoma Company their properties in accordance with the agreed arrangement, but it now develops that the properties which were to be turned over to the defendant, or to its Oklahoma subsidiary by Kistler, have never been transferred and are still held by Producers' and Refiners' Corporation of which Kistler is president. Producers' and Refiners' Corporation appears to have acquired the shares of stock of the defendant which under Kistler's agreement with Templeman and Frantz were to be issued to him. Among the properties which Kistler was to assign to the

defendant but which the Producers' and Refiners' Corporation is now holding and operating are three certain leases said to be valuable, upon one of which, the Amos lease, oil has been discovered in such quantities as to make it of very great value. After the complainants had been ousted as officers of the defendant, its board of directors was increased, the Producers' and Refiners' Corporation's control was by the selection of the personnel of the defendant's board made firm, and the directorate of the defendant's subsidiary, the Oklahoma corporation, was also brought within the control of the Producers' and Refiners' Corporation. When this had been accomplished, the Producers' and Refiners' Corporation entered into a contract with the defendant and its subsidiary of Oklahoma, dated November 4, 1920, by which the Templeman companies of Delaware and Oklahoma agreed to deliver to the Producers' and Refiners' Corporation all their properties everywhere, and the Producers' and Refiners' Corporation agreed to operate the same. It is to be noted that this contract was entirely unnecessary, in so far as delivery of possession is concerned of all the properties which the Templeman Company was to receive from Kistler or his company, the Producers' and Refiners' Corporation, because as before stated these properties had never been assigned as contemplated by the agreement. Their possession was still in the Producers' and Refiners' Corporation where it had previously been, and now continues to be. Whatever effect the contract may have had by way of rendering Producers' and Refiners' Corporation liable to account to the Templeman companies for the profits made in operating the properties, has since April, 1921, been destroyed because on that date the contract of November 4, 1920, was canceled by the parties to it. All the parties to it being in the control of the directors of Producers' and Refiners' Corporation, the cancellation was therefore in effect the act of the Producers' and Refiners' Corporation, the party in possession and operation of the properties, in receipt of their revenues and the party liable under the contract to account. Whatever protection the contract afforded to the Templeman companies was thus taken away from them by the other party to it which chose to relieve itself of the contract's obligations.

The consequence is that the properties alleged to be in equity those of the defendant are in the hands of the Producers' and Refiners' Corporation which controls and dominates it and the large revenues derived therefrom are being withheld from it. The complainants say they are advised that the Producers' and Refiners' Corporation repudiates any claim of right on the part of the defendant to the properties in question. If so, a suit against the Producers and Refiners' Corporation is necessary for the protection of the defendant's interests, a suit which under the present showing appears to have enough of facts behind it to justify the view that it has sufficient merit to warrant its institution and vigorous prosecution. That such a suit can be expected to be prosecuted vigorously, if instituted, by the present officers of the defendant is a hope which would have to rest for its support on such a degree of faith in the disinterestedness of human nature as experience teaches us is rarely if ever to be found, for such a suit would in substance be conducted by the Producers' and Refiners' Corporation against itself. It is true that the officers of the Producers' and Refiners' Corporation say that it is their intention to settle the obligations to the defendant and its subsidiary when the complainants cease what is called the vexatious litigation which they have been carrying on for some time. It is difficult for me to perceive why the Producers' and Refiners' group should exact as a price for the promised adjustment that the complainants who are among the defendant's stockholders and creditors should cease their attempts to force what they conceive to be their and the defendant's rights. This assurance that the matters in controversy will be all straightened out some day, is hardly persuasive in view of the following facts.

These are first, that time is moving on. It is now about six years, perhaps a little more or less, since the subject-matter of this controversy had its origin. Time is in danger of soon interposing a barrier to the complainants' rights as stockholders and creditors. Indeed we hear something in the cause now pending of laches charged against the complainants, a charge which, however, does not seem to me to be well made.

The second fact which is of great significance to my mind as indicating that it would not be wise or judicious to leave the

defendant, its stockholders and creditors, to work out their rights through the instrumentality of the defendant's present officers and board of directors, inheres in the undisputed circumstance that with respect to the defendant's Oklahoma subsidiary, the Producers' and Refiners' group went so far as to co-operate in an abortive attempt to have it adjudicated a bankrupt, and with respect to the defendant itself allowed its charter to become forfeited for nonpayment of taxes. To be sure the charter was revived and restored by a payment of the taxes. But this was after the present suit was instituted and might very well have been prompted by a desire to avoid an almost certain decree for a final receiver under the provisions of the statute which deal with the winding up of the affairs of dissolved corporations. Until the present bill was filed, the Producer's and Refiners' group which controlled the defendant was apparently indifferent to its continued existence.

There is enough in the facts to indicate the possibility that the Producers' and Refiners' Corporation, if it does sustain a relation of liability to the defendant either directly or indirectly through the Oklahoma subsidiary, was at least indifferent to, if not actively interested in the destruction of, the continued life of its creditor and adversary.

It seems to me that an impartial person who is entirely freed from the interested point of view of the Producers' and Refiners' Corporation, as well as of Kistler, its president, and Bosworth, the defendant's director, ought to be placed in charge of the defendant's affairs with the view of protecting its rights and the rights of its stockholders and creditors before time has worked to their prejudice.

Of course any statements of fact in the foregoing are to be considered as based on the evidence now before me at this interlocutory stage, and are subject to be overcome on final hearing.

The motion will be granted. Order accordingly.