JAMES R. MORFORD, Attorney-General of the State of Delaware, upon the relation of HALLIE GRAY; MARY SHALLCROSS; MARY C. POOL; EDWARD S. JONES, Trustee; and THE MAYOR AND COUNCIL OF MIDDLETOWN, a municipal corporation of the State of Delaware,

*vs.*

THE TRUSTEES OF THE MIDDLETOWN ACADEMY, a corporation of the State of Delaware.

*New Castle, July* 2, 1940.

*Herbert L. Cohen,* for complainant and relators.

*Harry K. Hoch,* for defendant.

THE VICE-CHANCELLOR: The question is whether a case has been made for the appointment of a receiver *pendente lite.* Facts appearing in the earlier opinion need not be restated. (See *ante p.* 58, 13 *A.* 2*d* 168.) By the last amendment to the bill, allegations are added which complain primarily of the activities of defendant in connection with the disposal of a part of its real estate. Four of defendant's trustees, the majority, have participated in these activities; while three trustees, the minority, have generally opposed.

The academy building in which school was kept from 1827 to 1929 stands on a lot, roughly rectangular, one side only of which has frontage on a street. Defendant, with the approval of its majority and disapproval of its minority trustees, submitted bids in 1938 and 1939 to the United States offering to sell a portion of this tract for the purpose of a post office site. The land described in each offer includes all that part of the main tract fronting on the street, except a strip having a frontage of eleven feet and, at this width, extending back along one side of the tract. The first offer required the demolition of the academy building. The rear line of the lot of the second offer is about 135 feet from the street and runs approximately eleven feet from the front steps of the building. The first offer was apparently rejected but the second one was accepted. Pursuant to the resulting agreement, in 1939, defendant conveyed the lot to the United States.

Under a portion of the property conveyed is a sewer line. The right to lay and maintain the line is owned by the municipal corporation of Middletown. Hence, the conveyance by the trustees was subject to this easement. In order to acquire all interests in the land, the United States this year instituted a proceeding to condemn the same lot described in the conveyance. Before it did so, however, it requested defendant to deposit five thousand dollars to guar-

antee the acquisition of the lot at a cost not in excess of five thousand dollars. Defendant acceded to the request. A condemnation proceeding was begun in the District Court of the United States for the District of Delaware; and the United States has acquired title and right to possession of the lot, although possession has not been taken. An award of compensation remains to be made to defendant and the town of Middletown as the owners of all interests in the lot.

In the last amendment to the bill it is alleged and charged that the proximity of the proposed post office would prevent the academy building from being used in furtherance of defendant's corporate purpose; that the disposal of the property was not in accordance with the charter, nor in furtherance of defendant's specific object and purpose; that defendant was without power to make the conveyance, and that it was illegally and wrongfully made; that if the academy building and land is to be devoted to defendant's object and purpose, or for the benefit of the public, it is essential that the building and land remain as heretofore; that there is no other tract and building in Middletown as desirable for use by the public or as a seminary of learning as the premises on which the academy is now located. Continuing, it is alleged that the land remaining after the conveyance has been rendered valueless, and that the price to be received by defendant for the post office site is grossly inadequate and that the transfer constitutes waste and dissipation of the corporate assets. It is further alleged that "efforts were directed by groups of residents" of Middletown "to have the United States Government not take the academy grounds," but that "advices received were that the Government was being strongly urged by some" of the majority trustees "to consummate the transaction" and "the position and actions taken" by such trustees have "prevented any opposition to the taking of the site from being effective"; that the majority trustees have been unwilling to terminate the agreement with the United States and

"have been insisting in every way possible that the Government continue the said agreement" and that "the activities of said Trustees in this regard have been considerable"; that such trustees "have been activated in the matters alleged" by "reasons other than the best interests of the defendant"; that "because of the internal dissension" among the trustees, "the property and assets * * * are not being conserved properly and are being wasted and dissipated"; that the public and the State of Delaware have suffered irreparable damage, which will continue unless a receiver *pendente lite* be appointed; that because of negotiations between certain residents of Middletown on the one hand, and the United States on the other looking toward a reconsideration by the latter of its decision to use the academy property as a post office site, it is imperative that a receiver be appointed to protect and conserve the interests of defendant and the public; that if the majority trustees retain control, the efforts to preserve the building and property in the public interest will be rendered futile; that a receiver *pendente lite* is necessary to protect defendant's interests as to the amount of damages to be received for the land taken, at a "trial which would be had in June, 1940, if the agreement between the defendant and the Government is not terminated prior thereto"; that a receiver *pendente lite* is needed to protect and conserve the assets from further waste and unless appointed, great and irreparable damage will result to defendant and to the public.

Both sides have filed affidavits, the minority trustees supporting complainant's case, and the majority trustees, the defendant's case. The majority trustees deny non-user or mis-user of corporate powers and in substance deny any impropriety in the acts of defendant or of themselves. They assert that the price to be received for the lot disposed of is adequate, and that their activities have been pursuant to the powers conferred by the charter and in accordance with their best judgment. The affidavits deal with many

matters with which we are not here concerned. Whether the site chosen is appropriate or desirable for a post office will not be considered.

The corporate purpose of defendant is the establishment and operation of an academy in Middletown as a seminary of useful learning. Aside from bald assertions to the contrary by the majority trustees, I find nothing in the record to show how the disposal of the lot to the United States could do anything but prevent the use of the academy building and remaining property to carry out the corporate purpose. Separated from any street except by a long narrow passageway on one side and situated back of another building, it would seem to follow necessarily that the uses of the remaining property would be substantially lessened for any purpose. Defendant's affidavits do not suggest that the reason for the disposal of the property is to acquire another location, nor do they deny the allegations that there are no other tract of land and building in Middletown as desirable for a seminary of learning as the one previously used. Indeed, from the affidavits in opposition to the first application for a receiver, I am at a loss to understand the majority trustees' position. One of them in a former affidavit, said that "The Trustees have for some time had under advisement and frequent discussion * * * the question of establishing a free public library in the Academy Building * * *"; that "This deponent has for several years past been talking to individual Trustees about the ways and means and advisability of establishing a free public library in the Academy Building with the trust funds and the majority of the Trustees agreed to sell the parcel of land to the Government for a Post Office site in order to raise the additional necessary money in furtherance of the Library project." But complainant, besides denying that such use would be proper under the charter, has produced a photostatic copy of defendant's first offer to the United States, signed by the above deponent, which makes it a condition that the building be entirely demolished. Manifestly,

a library in the academy building could not have been the purpose of the first offer. Notwithstanding the undisputed contents of the offer, the same trustee in the affidavit above referred to said that "The Government did demand of the Trustees a slightly larger parcel of land which would have involved the demolition of the Academy Building, but the Trustees refused to accede to the Government's suggestion in this respect." To like effect, the other three of the majority trustees in a former affidavit stated that "a majority of the Board of Trustees have always opposed the demolition of the Academy Building * * *." Directly refuting this, complainant has brought forward a copy of the minutes of a meeting of defendant's trustees held on July 20, 1938, which shows that the majority trustees, including these very deponents, voted in favor of the first offer to the Government requiring the demolition of the building. Defendant's counsel replies that these seeming contradictions will be readily explained at the final hearing. However, until they are explained they do not invite complete reliance upon the candor and full disclosure of the affidavits of these individuals. Consequently, it seems to me that defendant has not overcome complainant's *prima facie* showing that the disposal to the United States of the post office site would, in effect, prevent the carrying out of the corporate purpose of defendant.

It is true that under its charter, the trustees of defendant are empowered to dispose of its property "in such manner and form as they may deem most advantageous or beneficial to the said institution." There is, nevertheless, a basic distinction between a disposal of property in aid of a corporate purpose and a disposal which effectively prevents the carrying out of the primary object of the corporation's existence. The latter, if not beyond the power of the corporation, may well be an abuse or mis-use of a power.

From all that now appears, defendant is faced with the following dilemma: if, as is apparently contended, it has not failed during the past years to use its franchises,

then there is reasonable probability that the acts of disposing of the post office site will disenable it to continue using them, and forfeiture of the charter would ensue; if, on the other hand, defendant has failed to use its franchises so as to justify forfeiture on this ground alone, the disposal of the tract would not thereby be rendered unobjectionable but would be an added ground of forfeiture.

Defendant contends that there is no need for a *pendente lite* receiver because the United States already has title and right to possession of the post office site. This paramount title and right is not here denied. What complainant asserts is, as I understand it, that the United States for reasons wholly apart from this case may be willing to give up its right and, in effect, to undo what has been done; but that the majority trustees, armed with the contract between defendant and the United States, are preventing this by their urging that the post office project be proceeded with. The record discloses and indeed it was frankly conceded at the argument that the majority trustees have diligently exerted themselves to push forward the Government's acquisition of defendant's land for use as a post office.

The circumstances which make it possible that the United States may be disposed to return the tract to defendant arise out of negotiations between various residents of Middletown and officials of the Federal Government. A petition, alleged to have been signed by 628 of the residents of Middletown and rural patrons of the post office and protesting against the selection of the academy grounds as a post office site, has been forwarded to a department of the Government. Complainant has produced a copy of a letter of a Senator from Delaware indicating that the United States will consent that the matter of the post office remain in *statu quo* for the present, and that he feels sure that he "will have the cooperation of the Departments here [in Washington] in adjusting the matter so that the academy property will not be taken against the wishes of a large proportion of the citizens of Middletown." Thus, although

the property has been disposed of, there is yet a chance that it may be re-acquired before the erection of a post office on it would make such re-acquisition practically impossible.

A receiver could not, of course, prevent the United States from taking immediate possession of the land; but, for whatever effect it might have, in view of the probable willingness of the United States to delay action on its part, he could advise the appropriate authority that at least until this suit may be finally determined, neither he, nor the defendant, because of the contract, conveyance, condemnation proceedings, or otherwise, will take any steps to press the matter further. In this way, and because of the somewhat unusual circumstances of the case, there may possibly be preserved what seems to be the last chance to retrieve property which, for the present, must be considered to have been wrongfully disposed of.

The need for a receiver is not lessened because of a resolution of defendant's trustees adopted a few days before the hearing on the present rule and authorizing the acceptance of a reconveyance of the lot upon certain conditions. One of the conditions is: "if the Government * * * does desire to select some other site for a Post Office." No connection is apparent between defendant's corporate purpose and the wishes of the United States to erect a post office on some other site. Aside from that, the resolution contemplates no affirmative action of any kind to preserve the *status quo* during the pendency of this suit.

The affidavits with respect to the adequacy of the consideration to be received for the lot are conflicting. But certain it is that defendant's first offer was to sell a somewhat larger portion of the property for eight thousand dollars; whereas, under the present agreement, five thousand dollars is the total amount which the United States will pay; and out of this five thousand dollars defendant will receive only the balance left after deducting a sum, yet undetermined, which will be awarded to the town of Middletown as compensation for its sewer line and easement. Whether

the balance will be adequate and full consideration, bearing in mind the almost inevitable diminution in value of the remaining land, cannot now be determined. However, if the majority trustees should continue the proceeding on defendant's behalf for an assessment of damages in the condemnation cause, it seems hardly likely that they would be zealous to obtain the highest award which might be allowed defendant for the taking of its land; for an award of damages in excess of the amount to which defendant has agreed would tend to substantiate the allegations of inadequacy of price and waste of assets, and the trustees might find themselves chargeable with personal liability. With a matter in the offing which requires corporate action, a conflict of interest between the corporation and those having the conduct of its affairs is a circumstance entitled to no little weight in considering the propriety of the appointment of an impartial person during the pendency of litigation, to safeguard the rights and property of the corporation and of all persons concerned with it. *Satterthwaite, Attorney General v. Eastern Bankers Corp.,* 17 *Del. Ch.* 310, 154 *A.* 475; *Frantz v. Templeman Oil Corp.,* 15 *Del. Ch.* 203, 134 *A.* 100.

Defendant is a charitable corporation. In the fulfillment of its purposes the public, not private shareholders, have an interest. From all that appears, its activities during the past ten years have been few. Consequently, there should be less reluctance to appoint a receiver *pendente lite* than in the case of an active producing or manufacturing enterprise. *Frantz v. Templeman Oil Corp., supra.* It seems to me that the facts amply establish the probability of injury to defendant and the need for a receiver pending the final determination of this cause, to preserve the present situation so that the land disposed of may not be put beyond recall, or, if this be impossible, to obtain the full measure of compensation for the land. It is not perceived that substantial damage could result from the granting of such relief. The conclusion follows that this extraordinary

remedy is here "the appropriate means of securing an appropriate end." *Ellis v. Penn Beef Co., et al.,* 9 *Del. Ch.* 213, 80 *A.* 666, 667.

As previously announced to the parties, an order will be advised appointing a receiver *pendente lite* for the purpose of preserving the *status quo* in so far as it may be preserved.